John DUNKLE and Mary Dunkle, Individually and as Co–Administrators of the Estate of William K. Dunkle, Appellants

v.

MIDDLEBURG MUNICIPAL AUTHORITY, Melham Associates, P.C., Rick Bittner and Wade Schultz.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2003.

Decided Feb. 10, 2004.

Matthew A. Cartwright, Wilkes Barre, for appellants.

Stephen L. Banko, Jr., Camp Hill, for appellees.

BEFORE: COLINS, President Judge, LEAVITT, Judge and McCLOSKEY, Senior Judge.

OPINION BY JUDGE LEAVITT.

John Dunkle and Mary Dunkle (Dunkles), individually and as co-administrators of the Estate of William K. Dunkle, appeal from the order of the Court of Common Pleas of the 17th Judicial District (trial court) granting the Middleburg Municipal Authority's (Authority) motion for summary judgment. The trial court held that the Dunkles could not make out a common law tort claim against the Authority, which is the first determination to be made where the defense of governmental immunity is asserted. We affirm.

William K. Dunkle (decedent), the Dunkles' son, was asphyxiated when a sewer trench, in which he was working, collapsed and buried him. At the time, he was employed by Gutelius Excavating, Inc. (Gutelius), which had been engaged by the Authority to excavate the trench as part of the East Middleburg Sewer Extension Project, a wastewater disposal improvement project. In their complaint, the Dunkles alleged that the Authority, Melham Associates, P.C. (Melham), Rick Bittner and Wade Schultz[1] were, *inter alia,* each negligent in their failure to inspect and supervise the excavation to ensure that it satisfied the safety regulations of the Pennsylvania Department of Labor

---

1. Melham was the professional engineering firm engaged by the Authority to design, supervise and inspect the sewer project. Defendants Bittner and Schultz were employed by Melham. On January 24, 2003, the trial court approved a petition to settle the Dunkles' claims against defendants Melham, Bittner and Shultz.

and Industry and of the federal Occupational Safety & Health Administration (OSHA).

The decedent was in a sewer trench approximately 14 feet deep when it collapsed; a trench box had not been installed and no other precaution, such as sloping the trench walls, had been taken. David Gutelius, owner of Gutelius, testified in deposition that he knew that OSHA required such precautions for trenches deeper than five feet. However, he believed that the shale in which they were digging was classified as type A, which does not require shoring under applicable OSHA rules. He described this shale as "not a solid rock, but it's not anything that water or sand dilute in it [sic]." Reproduced Record 160a. (R.R. ———). He explained that he found OSHA's rules and regulations misleading because solid rock, which stands vertical, does not require shoring. He explained that

> [u]ntil this [shale] caved in, it would have been called stable rock, stood vertical, 90 degrees. After it caves in, according to OSHA's rules and regulations, it's not stable, so that turns it into a C soil. Before the accident it was stable.... After the cave-in, it's not stable anymore, so now it's not a stable rock.

R.R. 161a. A Gutelius employee who was on the jobsite that day also testified to the stability of the soil as follows:

A. I'm quite sure if there would have been [a discussion about whether to use a trench box that day, the job foreman] would have put it in. There's no doubt in my mind.... The way the smoke was rolling off the hoe teeth when he dug the pipe,

there was no doubt. I mean, I trusted my life in that ditch.

Q. Because it seemed pretty hard?

A. Yes, it did.

R.R. 979a.

In his deposition, the Authority's chairman, Dorr Stock, testified that the Authority relied upon its contractor, Gutelius, to be responsible for the safety of his workers. Gutelius was experienced in sewer projects, having been in the excavation business since 1986. The Authority's contract required Gutelius to provide the appropriate safety precautions and to comply with all applicable laws and regulations. Stock testified that he believed that Melham, which provided for inspections by the engineers, would also provide on-site safety advice.[2]

The Authority moved for summary judgment in its favor, asserting that it enjoyed governmental immunity under the act commonly known as the Political Subdivision Torts Claims Act, (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. Under Section 8541, the Authority, as a local agency, is immune from liability for damages arising from its own acts or those of its employees, unless the injury falls into one of the exceptions to governmental immunity specified in Section 8542. To qualify for an exception under the Tort Claims Act, a plaintiff is required to prove that (1) the damages would be recoverable under common law or statute against a person unprotected by governmental immunity, and (2) the negligent act of the Authority or its employees, which caused the injury, falls within one of the limited categories of exceptions to immunity.[3] *Starr v. Venezi-*

---

2. However, the Authority's contract with Melham contained an exclusion for safety inspection which exclusion, as alleged by Appellant, was overlooked by Stock.

3. The Tort Claims Act provides in relevant part as follows:

**§ 8541. Governmental immunity generally**

*ano,* 560 Pa. 650, 657, 747 A.2d 867, 871 (2000). The Dunkles countered that the Authority's alleged negligence fell within the real estate and utility service facilities exceptions to governmental immunity[4] thereby precluding a judgment in the Authority's favor.

The trial court granted the Authority's motion for summary judgment, concluding that the Dunkles did not establish a claim recoverable at common law, which generally provides that the negligent actions of a contractor cannot be attributed to the person that engages the services of the contractor. Where, however, the contracted work is peculiarly hazardous, the negligence of the independent contractor may be imputed to the one employing the contractor. Relying on precedent from the Superior Court of Pennsylvania, the trial court held that excavation of a sewer trench is not such a peculiar risk, and, therefore, the Authority could not be held vicariously liable for the negligence of Gutelius.[5] This timely appeal ensued.[6]

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

§ 8542. **Exceptions to governmental immunity**

(a) **Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) *The damages would be recoverable under common law* or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. §§ 8541–8542 (emphasis added).

4. These exceptions are set forth in the Tort Claims Act as follows:

(b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

* * *

(3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

* * *

(5) *Utility service facilities.*—A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b).

5. Because the plaintiff could not make out a claim at common law, the trial court did not reach the question of whether the Authority's alleged tortious conduct fell within one of the two limited exceptions identified by the Dunkles.

6. Summary judgment is properly granted where there is no genuine issue of material

On appeal, the Dunkles assert that the trial court erred. They argue that the case relied upon by the trial court, *Motter v. Meadows Limited Partnership*, 451 Pa.Super. 520, 680 A.2d 887 (1996), was wrongly decided and not even consistent with other holdings of the Superior Court on what constitutes a peculiar risk. They invite this Court to establish different law. In addition, the Dunkles contend that the facts in *Motter* are distinguishable from the facts here.[7]

As noted by the trial court, one who employs[8] an independent contractor is not liable for physical harm caused by a negligent act or omission of the contractor. *Moles v. Borough of Norristown*, 780 A.2d 787, 791 (Pa.Cmwlth.2001); Restatement (Second) of Torts 409 (1965) (Restatement). However, an exception to this general rule has been identified by the Restatement for special dangers and peculiar risks as follows:

> Section 416. **Work Dangerous In Absence Of Special Precautions.**
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

\* \* \*

> Section 427. **Negligence As To Danger Inherent In The Work.**
>
> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement 416, 427. Pennsylvania has adopted this exception. *Philadelphia*

---

fact as to a necessary element of a cause of action and the moving party has clearly established entitlement to judgment as a matter of law. *Herman v. Greene County Fair Board*, 112 Pa.Cmwlth. 615, 535 A.2d 1251, 1253–1254 (1988); Pa. R.C.P. No. 1035.2. The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Dean v. Department of Transportation*, 561 Pa. 503, 507, 751 A.2d 1130, 1132 (2000). Our scope of review of a trial court's grant of summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Irish v. Lehigh County Housing Authority*, 751 A.2d 1201, 1203 n. 4 (Pa.Cmwlth.2000).

7. The Dunkles also argue that the trial court committed reversible error by basing its decision on the common law, which was the issue raised by the Authority. A trial court may commit reversible error if it raises an issue *sua sponte* and decides the case solely on that issue. *See Harrington v. Department of Transportation*, 784 A.2d 871 (Pa.Cmwlth.2001). Here, the issue decided, *i.e.*, whether the Dunkles had a claim cognizable at common law, fell within the ambit of the Authority's claim of governmental immunity and, thus, was raised in the motion for summary judgment and properly considered by the trial court.

8. The term "employer" is used in case law to describe a party with whom an independent contractor contracts for services. However, the relationship between a party who contracts for services and an independent contractor is not that of employer-employee as understood by the law. Thus, while the Authority hired Gutelius to perform services for the Authority, Gutelius was not an employee of the Authority.

*Electric Co. v. James Julian, Inc.*, 425 Pa. 217, 228 A.2d 669 (1967).

█ In *Motter*, the Superior Court considered whether working in a sewer trench presents a special danger or peculiar risk and found that it did not. To reach this conclusion, the Court applied the Pennsylvania test for making this determination:

1) Was the risk foreseeable to the employer of the independent contractor at the time the contract was executed?; and 2) Was the risk different from the usual and ordinary risk associated with the general type of work done, *i.e.*, does the specific project or task chosen by the employer involve circumstances that were substantially out-of-the-ordinary? [9]

*Motter*, 680 A.2d at 890 (citations omitted). Stated otherwise, a peculiar risk must be one *not* created solely by the contractor's negligence in performing the operative details of the work.

Affirming the trial court, the Superior Court held that the "cave-in of a sewer trench is not an unusual or unexpected risk, but rather, is a risk faced by excavating companies every day." *Motter*, 680

A.2d at 892.[10] The appellant's argument that digging in shale soil made the project unusually dangerous was also rejected. The risk was not digging in shale soil but the failure of the contractor to follow OSHA rules and regulations that increased the danger of a cave-in.

The Dunkles contend that *Motter* was wrongly decided and urge that, instead, we adopt pre-*Motter* holdings.[11] Alternatively, they suggest that we follow the Montana Supreme Court's decision in *Beckman v. Butte–Silver Bow County*, 299 Mont. 389, 1 P.3d 348 (2000).

In *Beckman*, the Montana Supreme Court held a municipality vicariously liable for the negligent failure of its subcontractor[12] to use a trench box in a trench that collapsed on a worker. In doing so, it reversed its earlier holding that a contractor would not be liable for injuries to a subcontractor's employee when the peculiar risk or inherent danger could have been avoided by standard precautions. In *Kemp v. Bechtel Construction Co.*, the Montana Supreme Court had previously considered the peculiar risk exception in the Restatement and held that

9. This test was first established in *Ortiz v. Ra–El Development Corp.*, 365 Pa.Super. 48, 528 A.2d 1355 (1987), and adopted by this court in *Thomas v. City of Philadelphia*, 668 A.2d 292 (Pa.Cmwlth.1995); *Donnelly v. Southeastern Pennsylvania Transportation Authority*, 708 A.2d 145 (Pa.Cmwlth.1998); *Moles v. Borough of Norristown*, 780 A.2d 787 (Pa..Cmwlth.2001).

10. The Superior Court reasoned from *Edwards v. Franklin Marshall College*, 444 Pa.Super. 1, 663 A.2d 187 (1995), where a construction worker, employed by an independent contractor, fell through a roof "[b]ecause the remodeling of these old structures necessarily involved working high off the ground, the danger of falling is apparent." *Id.* at 191. The Court found that the danger of working in a trench is likewise an apparent one.

11. The Dunkles urge this Court to follow the "previously well settled law" of *Heath v. Huth Engineers, Inc.*, 279 Pa.Super. 90, 420 A.2d 758 (1980) (holding an employer of an independent contractor liable for a collapse of a sewer trench) and *Dudash v. Palmyra Borough Authority*, 335 Pa.Super. 1, 483 A.2d 924 (1984) (employer may be liable for death of employee of contractor hired to dig a sewer trench). Brief for Appellants at 16. The *Motter* Court found the discussion in *Heath* and *Dudash* too cursory and conclusory to serve as persuasive precedent. We agree.

12. In *Beckman*, the relationship was between a developer that was required by the municipality to extend water lines because the municipality's crews were too busy. In turn, the developer engaged the services of an excavation company as its subcontractor.

Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, *the risk or danger arose out of a failure to use standard precautions.*

221 Mont. 519, 720 P.2d 270, 275 (1986) (emphasis added).[13] The *Beckman* court decided that in *Bechtel*, it had misconstrued the interplay of "ordinary" and "special" precautions, explaining that

The distinction described in the Restatement between "ordinary" or standard and "special" precautions depends on whether the precaution is meant to counter a common or a peculiar risk. Employers are not liable for every tort committed by a subcontractor who is engaged in an inherently dangerous or hazardous activity. Rather, an employer is only vicariously liable for those torts which arise from the unreasonable risks caused by engaging in that activity. [With regard to trenching operations, t]hese precautions may include sloping the banks of a trench, mechanically shoring a trench bank, or using a trench box. *Such precautions, although arguably standard with regard to the risk posed, are special in that they are designed to protect workers from the unreasonable, extraordinary, and unusual risks associated with trenching operations.*

*Beckman*, 1 P.3d at 353 (citation omitted). Thus, it concluded that trenching was inherently dangerous as a matter of law. The concurring opinion [14] expressed concern that the *Beckman* holding would allow the peculiar risk exception in Sections 416 and 427 of the Restatement to swallow the general rule in Section 409 that employers not be held liable for the torts of their contractors or subcontractors.

■ The *Beckman* analysis is not persuasive. The Montana Supreme Court believed that the precautions needed to protect workers in a trench were "special" not "standard," reasoning as follows:

Often, the precautions must be tailored to the particular situation. For example, the site in question may not allow for sloping and therefore, other precautions such as shoring, bracing or trench boxes must be used. The proper use of such precautions requires special knowledge and [t]hus we consider such trenching activities inherently dangerous.

*Beckman*, 1 P.3d at 354. Stated otherwise, because there is a choice of using a trench box or using sloping sides to protect trench workers, and this choice requires the exercise of discretion, such precautions cannot be considered standard. This is a broad leap of logic. The fact that

---

**13.** The Court affirmed this holding in two subsequent opinions, *Kemp v. Big Horn County Electric Co-op.*, 244 Mont. 437, 798 P.2d 999 (1990) and *Micheletto v. State*, 244 Mont. 483, 798 P.2d 989 (1990). *Micheletto* was cited by the *Motter* court as persuasive precedent.

In overruling these decisions, the Court reaffirmed its prior holding in *Ulmen v. Schwieger*, 92 Mont. 331, 12 P.2d 856 (1932), that an employer is vicariously liable for injuries to others caused by a subcontractor's failure to take precautions to minimize the risk associated with an inherently dangerous activity.

**14.** In a concurring opinion, Justice Gray of the Montana Supreme Court opined,

I must express concern about where this decision will take both this Court and those subject to it. Under 409, the general rule remains that employers are not liable for the torts of their independent contractors or subcontractors. *Thus, it is incumbent on us to apply the exceptions narrowly, as the Court expressly undertakes to do, lest we allow the exceptions to swallow the general rule.*

*Beckman*, 1 P.3d at 357 (Gray, J., concurring) (emphasis added).

a harm can be prevented by more than one type of precaution does not transform an everyday risk into an inherently dangerous one. Indeed, the precautions needed to prevent a trench cave-in are not technically complex and have likely been in use for as long as trenches have been excavated.

■ To find every trench inherently dangerous would allow the exception in Sections 416 and 422 of the Restatement to swallow the general rule in Section 409, against which the *Beckman* concurring opinion warned. Further, it would be inconsistent with our prior holding that a special danger or peculiar risk exists only where, "the risk is *different* from the usual and ordinary risk associated with the general type of work done." *Moles*, 780 A.2d at 791 (emphasis added) (citation omitted).[15] Characterizing all excavation work as involving a special danger or peculiar

risk would render the terms "special danger" or "peculiar risk" meaningless, and we decline to do so.[16]

Thus, we agree with the trial court in *Motter*, which found that "[d]igging a sewer trench around ten feet in stable or unstable soil appears to be nothing more than a common, routine worksite procedure." *Motter v. The Meadows, Ltd. Partnership et al.*, No. 2740 Civ. 1991, pp. 9–10 (Cumberland Co. July 18, 1994), *quoted in Motter*, 680 A.2d at 891.[17] This is not to say that *all* trenching activities are ordinary. A plaintiff still has the opportunity to establish that "the risk is *different* from the usual and ordinary risk associated with the general type of work done." *Moles*, 780 A.2d at 791 (emphasis added) (citations omitted). Excavating a trench next to an abandoned mine shaft, for example, might

---

**15.** The Restatement provides,

b. *Peculiar risk and special precautions.* It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result.... This Section ... is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work ...
*This Section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions.* The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, *arising out of the particular situation created,* and calling for special precautions. "Peculiar" does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has *reference only to a special, recognizable danger arising out of the work itself.*

Restatement, § 413 cmt. b (emphasis added). This Comment also has application to Section 416.

**16.** *See Ortiz v. Ra–El Development Corp.,* 365 Pa.Super. 48, 528 A.2d 1355 (1987). Moreover, as the District Court noted in *Marshall v. Southeastern Pennsylvania Transportation Authority,*

[i]n order for the liability concepts involving contractors to retain any meaning, especially in industries such as construction where almost every job task involves the potential for injury unless ordinary care is exercised, peculiar risk situations should be viewed narrowly, as any other exception to a general rule is usually viewed.

587 F.Supp. 258, 264 (E.D.Pa.1984). *Accord Moles,* 780 A.2d at 791 (peculiar risk situations are to be viewed narrowly as exceptions to the general rule).

**17.** "Excavating a sewer trench involves work in deep holes where the danger of collapse is an obvious and unavoidable risk .... [and the danger of] cave-in of a sewer trench is not an unusual or unexpected risk, but rather, is a risk faced by excavating companies every day." *Motter,* 680 A.2d at 892.

present the kind of peculiar risk intended by the Restatement exceptions. If a trenching operation runs the risk of an explosion or instant flood, the standard precautions of a box or sloped sides might not be adequate to provide protection to workers in the trench. In such examples, the Restatement exceptions might apply.

The Dunkles contend, alternatively, that the *Motter* holding should be confined to its facts. They note that in *Motter*, the contractor had brought a trench box to the site because soil had fallen into the trench during the project. By contrast, Gutelius asserted that he did not know that hard shale could cave in. On the other hand, Stock, the Chairman of the Authority,[18] had this knowledge. These factual differences are not sufficient to distinguish this case from *Motter*.

The real point is that Gutelius was charged by contract with the Authority and by OSHA regulations to use standard precautions to protect the decedent from a cave-in of the trench. A trench box, which was familiar to Gutelius, would have prevented this tragedy. However, Gutelius did not take any precautions.

■ Because the Dunkles failed to establish that the particular trenching presented a peculiar risk or danger, the trial court correctly applied the common law rule that an employer will not be held vicariously liable for the tortious conduct of its contractors. Accordingly, the Dunkles could not establish a common law cause of action in tort against the Authority, which is the first step in defeating a claim of governmental immunity. We hold that the Authority was entitled to sum-

mary judgment pursuant to 42 Pa.C.S. § 8541.

For all these reasons, the decision of the trial court is affirmed.

## ORDER

AND NOW, this 10th day of February, 2004, the order of the Court of Common Pleas of the 17th Judicial District dated March 12, 2003 in the above captioned matter is hereby affirmed.

---

18. The fact that Stock had a better understanding of OSHA requirements does not support any conclusion except that Gutelius was negligent. Stock merely testified to his knowledge of OSHA regulations and their requirements and not to the actual conditions of the trench site. If anything, these comments relate to the general risks associated with trenching activities. They do not support a conclusion that the Authority was aware of any peculiar risks or special dangers at the work site.