**LIVERPOOL TOWNSHIP, Appellant**

v.

**Dean STEPHENS.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2006.

Decided June 19, 2006.

P. Richard Wagner, Harrisburg, for appellant.

James H. Turner, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Liverpool Township appeals a decision of the Court of Common Pleas of the 41st Judicial District (Perry County Branch) (trial court) enjoining the enforcement of a township ordinance that regulates the application of processed municipal sewage to agricultural land. The trial court found that this ordinance conflicted with a state law that regulates this activity and, thus, was preempted. Accordingly, the owner of the farmland, Dean Stephens, was found to have done all that was required in order to fertilize his fields lawfully by obtaining a permit from the state. We affirm.

In 1993, the Township adopted Ordinance 13 pursuant to Section 708 of The Second Class Township Code.[1] It made it unlawful "for any person to use or continue to use their land or any other land as a storage, transfer, collection, processing

---

1. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701. Section 708 of The Second Class Township Code was originally enacted by the Act of May 1, 1933, P.L. 103, but was amended by the Act of November 9, 1995, P.L. 350, and renumbered as Section 2101 of The Second Class Township Code, 53 P.S. § 67101.

or disposal site of solid waste or residual waste *unless such person shall have a permit ....*" LIVERPOOL TWP., PA., ORDINANCE NO. 13, art. III(1) (1993) (Ordinance 13) (emphasis added). The application of processed municipal waste, *i.e.,* fertilizer, to farmland is considered the "disposal ... of solid waste" and, as such, is regulated by Ordinance 13. To qualify for a "disposal" permit under Ordinance 13, the landowner must agree not to spread the fertilizer "within five hundred (500) yards of any dwelling, church, school, or any other building or buildings which from time to time are utilized for human occupancy or residency." ORDINANCE 13, Article V(1).

On December 17, 2003, the Township filed an action to enjoin Stephens from fertilizing his fields with processed municipal sewage until he obtained an appropriate permit from the Township. The Township instituted this action because Stephens had fertilized his fields on several occasions in 2003 without the benefit of a Township permit.[2] This was not disputed by Stephens, but he contended that

he did not need a Township permit because he had a permit from the Pennsylvania Department of Environmental Protection (DEP) and was in compliance with the terms thereof. Stephens argued that Ordinance 13 was preempted by the Solid Waste Management Act (SWMA)[3] and its implementing regulations. Stephens then filed a motion for summary judgment requesting the trial court to enjoin the enforcement of Ordinance 13 or, alternatively, to direct the Township to issue Stephens a permit with terms consistent with those in his DEP permit. On February 10, 2005, the trial court granted Stephens' motion, holding that Ordinance 13 was preempted by the SWMA. The Township appealed.[4]

■ The Township presents two principal arguments for our consideration. First, the Township contends that Ordinance 13 is not preempted by the SWMA.[5] Second, it contends that it was authorized to set up its own permitting system by The Second Class Township Code.[6]

---

**2.** However, on April 27, 2004, Stephens applied to the Township for a permit to spread processed solid waste. Reproduced Record at 19a–21a (R.R. __).

**3.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

**4.** This Court's scope of review of an order granting summary judgment is plenary. *O'Donoghue v. Laurel Savings Association,* 556 Pa. 349, 354, 728 A.2d 914, 916 (1999). Our standard of review is clear: the trial court's order will be reversed only where it is established that the trial court committed an error of law or abused its discretion. *Dunkle v. Middleburg Municipal Authority,* 842 A.2d 477, 480 n. 6 (Pa.Cmwlth.2004). Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving

party is entitled to a judgment as a matter of law. Pa. R.C.P. No. 1035.2. The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Dunkle,* 842 A.2d at 480 n. 6. Summary judgment is proper only when the facts are so clear that reasonable minds cannot differ. *Harahan v. AC & S, Inc.,* 816 A.2d 296, 298 (Pa.Super.2003).

**5.** The DEP has filed an *amicus* brief in support of Stephens' position that Ordinance 13 is preempted by the SWMA.

**6.** The Township appears to offer a third argument as well. It contends that because Ordinance 13 bears a reasonable relationship to the public welfare, safety and health, it should not be struck down as unreasonable. We need not address this argument in light of our holding on the first two issues.

The impact of the SWMA upon the ability of local government to regulate in the area of solid waste has been a persistent subject of litigation and was most recently addressed by our Supreme Court in *Hydropress Environmental Services, Inc. v. Township of Upper Mount Bethel, County of Northampton*, 575 Pa. 479, 836 A.2d 912 (2003). At issue in *Hydropress* was an ordinance entitled "Ordinance for Agricultural Utilization or Other Land Application of Biosolids, Sludge, Septage or Other Waste Materials," which had been found preempted in its entirety by this Court. The Supreme Court affirmed in part and reversed in part in a plurality opinion. Six justices agreed that two provisions in the ordinance should be enjoined.[7] The first provision regulated the roads entering a waste disposal site, and the second required landowners to obtain permits for processing waste. However, the justices did not agree upon the legal basis for striking these provisions. Three believed that those two provisions were preempted by the SWMA; indeed, they believed that the entire ordinance was preempted. The other three justices believed that the township simply lacked the statutory authority to enact the two provisions in question. Notably, the six justices agreed that the township lacked the authority to duplicate DEP's waste disposal permit system.[8] As in *Hydropress*, the permit required under Ordinance 13 duplicates that required by DEP under the SWMA.

■ Because *Hydropress* is a plurality decision, it is not dispositive of the preemption issue raised in this case. We must look, then, to the 5–part test long followed by this Court for evaluating whether an ordinance has been preempted by state law. That test is as follows:

(1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted?

(2) Was the state law intended expressly or impliedly to be exclusive in the field?

(3) Does the subject matter reflect a need for uniformity?

(4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?

(5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?

*Duff v. Township of Northampton*, 110 Pa.Cmwlth. 277, 532 A.2d 500, 505 (1987). If the answer to one of these questions is affirmative, then the local ordinance will be found preempted by the state law.

To apply *Duff* to this appeal, we begin with a review of the SWMA. Section 104(6) of the SWMA gives DEP the duty to regulate the storage, collection, transportation, processing, treatment and disposal of solid waste. 35 P.S. § 6018.104(6). Disposal of solid waste includes, specifically, the application of sewage sludge on agricultural land, and such disposal activities are regulated to protect the air, water and public health of citizens. Regulations adopted by the Environmental Quality Board have established the standards for a DEP permit to apply sewage sludge to agricultural land. Among them are standards establishing setbacks and buffers. *See* 25 Pa.

---

7. The seventh, Justice Newman, did not believe that Hydropress had standing to bring suit.

8. Three justices believed requiring such permits was an *ultra vires* act by the municipality, and three believed the permitting system was preempted.

Code § 271.915(c) [9] and 275.202.[10] Relevant here is Section 271.915(c)(3), which provides that sewage sludge may not be applied to agricultural land that is within 300 feet from an occupied dwelling. 25 Pa.Code § 271.915(c)(3).[11] In addition, Section 275.202(5) states that sewage sludge may not be applied closer than within 50 feet of a property line, unless otherwise approved by DEP. 25 Pa.Code § 275.202(5).[12]

Ordinance 13 also regulates the application of sewage sludge to agricultural land, including where and how this activity will be conducted. It prohibits the application of sewage sludge within 500 yards of a dwelling, church, school, or any other building that from "time to time" is used for human occupancy or residency. ORDINANCE 13, Article V(1). Further, Ordinance 13 requires a landowner, such as Stephens, who wishes to apply sewage sludge to agricultural land to apply for a permit from the Township. A permit will not issue unless the landowner satisfies the Township's standards. ORDINANCE 13, Article IV(2).

Ordinance 13 conflicts with the SWMA regulatory scheme. Under the SWMA, sludge may not be applied within 50 feet of a property line or within 300 feet of an occupied building. 25 Pa.Code §§ 271.915(c)(3), 275.202(5). This latter requirement affects, presumably, buildings on and off the property being fertilized. By contrast, Ordinance 13 allows the application of sludge on farmland up to the property line so long as it is not applied within 500 yards of a building occupied "from time to time." [13] There is a significant difference between 500 yards and 300 feet of a building, and between 50 feet and 0 feet of a boundary line. There is a difference between a building occupied from "time to time," as it is expressed in Ordinance 13, and one actually occupied, as it is stated in the SWMA. These differences cannot be reconciled.

9. Chapter 271 governs the general provisions for municipal waste management and specifies certain general procedures and rules for persons who operate municipal waste management facilities. 25 Pa.Code § 271.2(a). Notably, a "facility," as defined in this chapter, is "[l]and, structures and other appurtenances or improvements where municipal waste disposal, processing or beneficial use is permitted or takes place." 25 Pa.Code § 271.1. This would include the land owned by Stephens.

10. Chapter 275 governs the land application of sewage sludge.

11. It states:

(c) Sewage sludge may not be applied to agricultural land, forest or a reclamation site that is:

\* \* \*

(3) Within 300 feet (or 91 meters) from an occupied dwelling unless the current owner there has provided a written waiver consenting to activities closer than 300 feet (or 91 meters). The waiver shall be knowingly made and separate from a lease or deed unless the lease or deed contains an explicit waiver from the current owner. This paragraph does not apply to features that may come into existence after the date upon which adjacent landowner notification is given under Chapter 275 or § 271.913(g) (relating to land application of sewage sludge; and general requirements). 25 Pa.Code § 271.915(c)(3).

12. It states:

Except for areas permitted by the Department prior to April 9, 1988, the land application of sewage sludge may not be conducted:

\* \* \*

(5) Within 50 feet of a property line within which the sludge is applied, unless otherwise approved by the Department, in writing. 25 Pa.Code § 275.202(5).

13. Occupancy under Ordinance 13 is so broadly stated that it would include even an outbuilding where equipment is stored and visited "from time to time" by persons retrieving equipment.

■ The fact that the General Assembly has enacted a statewide regulatory scheme relating to the disposal of waste does not, in itself, preclude a township from also regulating in that area. As our Supreme Court has explained

> a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable.

*Western Pennsylvania Restaurant Ass'n v. City of Pittsburgh*, 366 Pa. 374, 381, 77 A.2d 616, 620 (1951) (citation omitted). Nevertheless, "if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid." *Id.*

The goal of the SWMA is to protect the "public health, safety and welfare." Section 102(4) of the SWMA, 35 P.S. § 6018.102(4).[14] The Township claims that Ordinance 13 is allowed because the SWMA does not prohibit supplemental regulation by municipalities and, further, is authorized expressly by Section 2101 of The Second Class Township Code. This

Court's holding in *Sunny Farms, Ltd. v. North Codorus Township*, 81 Pa.Cmwlth. 371, 474 A.2d 56 (1984), the Township contends, supports the concept of a supplemental municipal regulatory regime with respect to the application of municipal sewer sludge to farmland.

We begin with a consideration of *Sunny Farms*. In that case, Sunny Farms sought to construct a hazardous waste dump on 325 acres of land in violation of the township's setback requirement that a hazardous dump be sited 500 yards from existing buildings. Although this Court upheld the ordinance, we did so because we found that it did not conflict with the SWMA's engineering or geological standards. *Sunny Farms*, 474 A.2d at 60. Because the township's ordinance was intended to protect general health, property values and aesthetics, its purposes were found to be different from those under the SWMA.[15] Thus, the ordinance was sustained against a preemption challenge.

The ordinance in *Sunny Farms*, as expressly stated in *Municipality of Monroeville v. Chambers Development Corp.*, 88 Pa.Cmwlth. 603, 491 A.2d 307 (1985), has been understood to be a zoning ordinance.[16] This Court has long held that because the SWMA does not expressly

---

14. Section 102 of the SWMA states in pertinent part:

> The Legislature hereby determines, declares and finds that, since improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health, safety and welfare, it is the purpose of this act to:
>
> \* \* \*
>
> (3) require permits for the operation of municipal and residual waste processing and disposal systems, licenses for the transportation of hazardous waste and permits for hazardous waste storage, treatment, and disposal;

> (4) protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes.
>
> 35 P.S. § 6018.102(3)-(4).

15. *Sunny Farms* considered the scope of Act 97, a predecessor version of the current SWMA; Act 97 does not differ from the current version of the SWMA in any way material to this appeal.

16. We stated: "[*Sunny Farms*] involved a *zoning ordinance* requiring a buffer zone around a proposed hazardous waste disposal facility." *Monroeville*, 491 A.2d at 310 (emphasis added).

state an intention to preempt zoning regulation, zoning regulation is permissible. *See, e.g., Greene Township v. Kuhl,* 32 Pa.Cmwlth. 592, 379 A.2d 1383 (1977). Even so, we have also long understood that a "local municipality cannot set geological or engineering standards stricter than those established by [DEP] for issuance of its permit." *Id.* at 1385. In *Greater Greensburg Sewage Authority v. Hempfield Township, Westmoreland County,* 5 Pa.Cmwlth. 495, 291 A.2d 318, 321 (1972), we held that the SWMA preempts local regulation of the *operation* of a sewage treatment plant, including the disposal of the sludge produced by the plant.

In short, the result in *Sunny Farms* is explained by the type of ordinance that was at issue. Regardless of whether the township's ordinance was actually a zoning ordinance, it regulated the placement of a dump, not its operation, to the specific end of protecting township property values and aesthetics.[17] By contrast, Ordinance 13 regulates an activity, *i.e.,* the "operation" of applying sewage sludge to farmland, and it has nothing to do with aesthetics or property values, which are the traditional goals of zoning. Because Ordinance 13 regulates how, when and where sewage

waste may be used to fertilize farmland, it sets "geological standards." As we explained in *Sunny Farms,* "[a] local municipality cannot set geological or engineering standards stricter than those established by [DEP] for issuance of its permit." *Sunny Farms,* 474 A.2d at 60 (quoting *Greene Township,* 379 A.2d at 1385).

■ We consider next whether Section 2101 of The Second Class Township Code, 53 P.S. § 67101, authorized the Township to supplement the SWMA's regulation of farmland fertilization. Section 2101 authorizes a second class township to prohibit accumulations of "ashes, garbage, solid waste and other refuse materials upon private property." 53 P.S. § 67101. Townships have always regulated junkyards, littering and trash pickup, and Section 2101 simply authorizes the continuation of these worthy efforts. However, it specifically requires that such township regulation be done "in the manner authorized by ... [the SWMA]." *Id.* By establishing standards for the application of municipal sewage sludge to farmland that differ from those in the SWMA, Ordinance 13 does not regulate "in the manner authorized by the SWMA." Accordingly, the Township exceeded its grant of authority under Section 2101 in enacting Ordinance 13.[18]

---

17. Even if a hazardous waste dump met all operational standards established in the SWMA, it does not follow that a township does not have the right to prevent its placement in the middle of a historic village green or in the middle of a district zoned for residential use.

18. At oral argument, the Township cited *Hunlock Township v. Hunlock Sand and Gravel Corporation,* 144 Pa.Cmwlth. 499, 601 A.2d 1305 (1992), to support its argument that The Second Class Township Code grants the Township the power to adopt Ordinance 13. The issue in *Hunlock* was whether the township ordinance, which set restrictions for the operation of, *inter alia,* sludge composting facilities in the township without zoning, was

an attempt to regulate zoning or was merely a nuisance regulation. The ordinance in question restricted the operation of a sludge composting facility, using such language as, "by nature of the type of activity undertaken, and odor necessitated by such activity and operation, ... contrary to the best interests and welfare of residents within a radius of two thousand (2000) feet of said operation or activity and constitutes a nuisance...." *Id.* at 1306 n. 1. This Court followed *Commonwealth v. Hanzlik,* 400 Pa. 134, 161 A.2d 340 (1960), which held that a township had authority to regulate an activity (*i.e.,* maintenance of automobile graveyards) to prevent a nuisance. *Hunlock,* 601 A.2d at 1307 (citing *Hanzlik,* 400 Pa. at 138, 161 A.2d at 343). Thus, in *Hunlock,* we held that the township's

The SWMA regulates the application of sewage sludge to agricultural land to the end of protecting "the public health, safety and welfare." Section 102(4) of the SWMA, 35 P.S. § 6018.102(4). The implementing regulations specify where, how and when such sludge can be applied. It can be applied to ground no closer than 50 feet from a property boundary line. 25 Pa.Code § 275.202(5). It may not be applied to ground that is too dry, cold or wet. 25 Pa.Code § 271.915(b), (c). Ordinance 13 has adopted a regulatory scheme that imposes geological standards that conflict with those in the SWMA.[19] Ordinance 13 cannot survive as legislation complementary of the SWMA because of this conflict. Our Supreme Court has directed that municipal regulations that are complementary, and thus permissible, must not conflict with the state regulation. *Western Pennsylvania Restaurant Ass'n,* 366 Pa. at 381, 77 A.2d at 620. The standards in Ordinance 13 are in some respects stricter and in some respects more relaxed.[20] As we explained in *Duff,*

> [A] municipality may be foreclosed from exercising power it would otherwise have if the state has sufficiently acted in a particular field. Obviously local legislation cannot permit what a state statute or regulation forbids or *prohibit what state enactments allow.*

*Duff,* 532 A.2d at 504 (emphasis original). Ordinance 13 allows what is forbidden by the state and prohibits what is allowed by the state.[21] We hold, therefore, that Ordinance 13, to the extent it regulates the application of municipal waste to agricultural land, is preempted.[22]

decision to restrict composting facilities was permitted by virtue of The Second Class Township Code. *Id.* at 1308. We held that the ordinance in question was simply a nuisance regulation and not a zoning ordinance. *Id.* at 1307.

The present case differs from *Hunlock* and *Hanzlik* in several respects. First, there was no evidence presented here that Stephens' fertilization of his fields presented the Township with a nuisance. As a matter of law, because Stephens did exactly what was permitted by DEP, it is impossible that this activity could constitute a common law nuisance, in fact or *per se.* Second, in *Hunlock,* there was no indication that the owner had a permit from DEP that regulated the placement or operation of its facility. In sum, preemption by the SWMA was not an issue in *Hunlock* and *Hanzlik.*

19. Ordinance 13 operates through a permit system, which is duplicative of the state permit system. This duplication is in itself anathema under *Hydropress.*

20. As noted, Ordinance 13 disallows the application of municipal sludge within 500 yards of a building; the SWMA regulations use a 300 feet standard. Under Ordinance 13, fertilizer may be applied up to the boundary line; under the SWMA regulations, the limit is within 50 feet of a boundary.

21. It was this duplication that the Supreme Court found offensive in *Hydropress,* albeit under different legal theories. In *Hydropress,* only two sections of the township's ordinance were questioned on grounds of preemption: Section 4(c), which required that the cost of any improvements to a township road used to access a waste material site be charged against the landowner, generator, hauler, or non-owner applicator of any waste material; and Section 7, which required applicants for a permit under the ordinance to post security, in a specified amount, to ensure their compliance with the ordinance. *Hydropress,* 575 Pa. at 483–484, 836 A.2d at 914–915.

22. In *Synagro–WWT, Inc. v. Rush Township, Pennsylvania,* 299 F.Supp.2d 410 (M.D.Pa. 2003), the U.S. District Court held that a township ordinance regulating the application of sewage sludge to agricultural land was preempted by the SWMA. The plaintiff in *Rush Township,* Synagro, was in the business of managing treated municipal sewage sludge for municipal treatment plants. Synagro obtained a permit from DEP to apply sewage sludge to certain mine reclamation sites. Rush Township then enacted its "Land Application of Sewage Sludge Ordinance," which applied to "all current existing permits issued or authorized by PA DEP for the land application of sewage sludge in Rush Township."

Ordinance 13 not only conflicts with the SWMA, it also interferes with the General Assembly's goal of a uniform and comprehensive scheme of regulation of municipal sewage treatment that leaves no room for side-by-side municipal regulation. *Duff,* 532 A.2d at 505. This statutory scheme addresses not just the treatment of sewage but also the disposal of the end product, *i.e.,* municipal sewage sludge. This sludge has to go somewhere. It is doubtful, for example, that there is enough farmland remaining in the City and County of Philadelphia on which to deposit all sewage sludge generated by Philadelphia. Balkanized regulation of the disposal of municipal sewage sludge would stand as an obstacle to the SWMA's comprehensive regulatory scheme. Under *Duff,* Ordinance 13 cannot be allowed to stand insofar as its terms conflict with and stand in the way of accomplishing the purposes of the SWMA.

For these reasons, the decision of the trial court is affirmed.

### ORDER

AND NOW, this 19th day of June, 2006, the decision of the Court of Common Pleas of the 41st Judicial District (Perry County Branch), dated February 10, 2005, in the above-captioned matter, is hereby AFFIRMED.

---

*Id.* at 414. The ordinance required landowners with a DEP permit to do additional groundwater and soil testing before acting under the DEP permit. Relying entirely upon Pennsylvania appellate case law precedent, the district court found the township's requirement not only duplicative of DEP's permit system, but also a substantial obstacle to the SWMA's goal of orderly and efficient land application of sewage sludge. *Id.* at 419 (citing *Abbey v. Zoning Hearing Bd. of the Borough of East Stroudsburg,* 126 Pa.Cmwlth. 235, 559 A.2d 107 (1989); *Municipality of Monroeville v. Chambers Development Corp.,*

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent. Not following the well-settled law of this Commonwealth, the majority finds that Liverpool Township (Township), a township of the second class, has no authority to regulate where sewage sludge is placed on property because it impermissibly interferes with "geological standards" set by administrative regulations of the Pennsylvania Department of Environmental Protection (DEP). I suggest that regulation has nothing to do with "geological standards" because it has nothing to do with "geology," but has everything to do with "smell"—bad smells—caused by sewage sledge dumped from other places that affect the ability of citizens of second class townships to enjoy their homes, property and lives. Because the General Assembly recognized that the statewide administrative regulations issued by DEP do not take into consideration local conditions and only deal with the operation of waste sites, it gave second class townships the authority to enact legislation regulating the placement of sludge and other solid waste to protect the health, welfare and safety of their citizens.

In 1993, the Township adopted Ordinance 13 "pursuant to the provision of the Act of May 1, 1993, P.L. 103, as amended by the Act of May 9, 1961, P.L. 194 (53 P.S. Section 65708)."[1] It made it unlawful

---

491 A.2d 307 (Pa.Cmwlth.1985); *Greater Greensburg Township Sewage Authority v. Hempfield Township, Westmoreland County,* 5 Pa.Cmwlth. 495, 291 A.2d 318 (1972)). *Rush Township* is persuasive precedent on the precise legal question of whether the SWMA preempts local regulation of the activity of applying sewage sludge to farmland.

1. 53 P.S. § 65708 of the Second Class Township Code was originally enacted by the Act of May 1, 1933, P.L. 103, No. 69, but was amended by the Act of November 9, 1995, P.L. 350, 53 P.S. § 67101 and renumbered as

"for any person to use or continue to use their land or other land as a storage, transfer, collection, processing or disposal site of solid waste or residual waste unless such person shall have a permit...." Article III.1 of Ordinance 13. The permit application to operate any of the facilities was to be in accord with the Solid Waste Management Act (SWMA)[2] and, among other requirements, the SWMA prohibited the application of waste "within 500 yards of any dwelling, church, school or other building or buildings which from time to time are utilized for human occupancy or residency." Dean Stephens (Stephens) admitted to disposing of solid waste on his farm and further admitted that he had not applied for a permit from the Township as required by Ordinance 13.[3]

The Township filed a complaint in equity seeking an injunction against Stephens from utilizing his property as a disposal site for solid waste until he applied and received an appropriate permit from the Township. Stephens defended against the action contending that he did not need a permit from the Township because he had a permit from DEP for the agricultural utilization of sewage sludge on a portion of his farm. He argued that he did not have to seek a permit from the Township because the area sought to be regulated by the Ordinance, i.e., the disposal of solid waste, was preempted by the SWMA and the rules, regulations, standards and procedures promulgated by DEP. The trial court and the majority agrees, holding that Ordinance 13 was preempted from local regulation because it had been preempted by the General Assembly's enactment of the SWMA, and the Township had no authority to enact such legislation.

The Township contends Ordinance 13 was not preempted by the SWMA because it had the authority to enact Ordinance 13 with its powers given to it under the Second Class Township Code.[4] Whether a state statute preempts local regulation is determined by the intent of the General Assembly. The General Assembly can specifically express its intent by either providing that municipalities may enact ordinances not inconsistent with state law or by expressly forbidding municipal regulation.[5] However, the General Assembly is often silent and is not presumed to have

Section 2101 of the Second Class Township Code. For convenience purposes, we will refer to it by its renumbered cite throughout the opinion even where previous opinions referred to it by its old number.

2. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003.

3. The SWMA is silent on proximity requirements. DEP regulations provide for less severe setbacks and buffers than does Ordinance 13. 25 Pa.Code §§ 271.915, 275.202 and 275.203. For instance, 25 Pa.Code § 202(5) provides "the land application of sewage sludge may not be conducted within 50 feet of a property line within which the sludge is applied, unless otherwise approved by [DEP], in writing," and 25 Pa.Code § 271.915(c)(3) mandates that sewage sludge not be applied to farm land that is "within 300 feet from an occupied dwelling."

4. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

5. For an example of express preemption, Section 602 of the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. § 601.602, provides:

Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code, and the Act of October 4, 1978 (P.L. 851, No. 166), known as the Flood Plain Management Act, all local ordinances and enactments purporting to regulate oil and gas well operations regulated by this act are hereby superseded. No ordinances or enactments adopted pursuant to the aforementioned acts shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by this act or that accom-

preempted the field by legislating in it; therefore, it must be clearly shown that it was the General Assembly's intent to preempt the field by legislation. *Retail Master Bakers Association v. Allegheny County*, 400 Pa. 1, 161 A.2d 36 (1960); *Baird v. Township of New Britain*, 159 Pa.Cmwlth. 333, 633 A.2d 225 (1993). The presumption against preemption is based on the understanding that what is being preempted is the ability of the municipality, through its elected local officials, to address the needs of its citizens.

Once it has been determined that an area has not been preempted, local legislation cannot interpose hurdles that would stand as obstacles "to the accomplishment and execution of the full purposes and objectives of the legislature." *Klein v. Straban Township*, 705 A.2d 947, 950 (Pa. Cmwlth.1998); *Duff v. Township of Northampton*, 110 Pa.Cmwlth. 277, 532 A.2d 500 (1987). Because recently, in *Southeastern Chester County Refuse Authority v. Zoning Hearing Board of London Grove Township*, 898 A.2d 680 (2006), where we held that the SWMA did not preempt local regulation, the issue in this case is whether the Township Ordinance has interposed regulatory hurdles that would frustrate the purpose of the state legislation.

Applying those standards in *Sunny Farms, Ltd. v. North Codorus Township*, 81 Pa.Cmwlth. 371, 474 A.2d 56, 59 (1984), we addressed the exact issues involved in this case. An operator of a landfill challenged an ordinance that prohibited the construction and operation of an underground, hazardous waste disposal facility and provided "[n]o such site for incineration or for disposition by the Sanitary Land Fill method shall be established within five hundred (500) yards of any dwelling, church, school or any other build-

ing or buildings which, from time to time, are utilized for human occupancy." In that case, we held that the township had the power under Section 2101 of the Second Class Township Code, 53 P.S. § 67101, to enact legislation regarding where a solid waste site could be located as well as not being preempted by the SWMA. We stated:

> We reject the contention that [local regulation] is preempted by the SWMA (Act 97), thus rendering the Township powerless to require a buffer zone between the waste site and occupied residences. Both Act 97 and its predecessor, the now repealed Pennsylvania Solid Waste Management Act (Act 241), are substantially similar in that each provides for extensive state regulation of the construction and operation of solid waste disposal facilities. When we construed Act 241 and failed to find explicit language evincing a legislative intent to override local zoning regulations, we allowed local regulation of sanitary landfills on the condition that engineering and geological standards were not stricter than the state's.

The majority attempts to distinguish *Sunny Farms* from the facts of this case in several ways. First, relying on *Municipality of Monroeville v. Chambers Development*, 88 Pa.Cmwlth. 603, 491 A.2d 307 (1985), the majority tries to explain away *Sunny Farms* claiming what was at issue was a zoning ordinance which has not been preempted by the SWMA, while the setback here was in an ordinance regulating where sewage sludge could be deposited. We did say in a stray comment in *Monroeville* that the ordinance in question in *Sunny Farms* was a zoning ordinance, not a police power ordinance, but by examining primary sources, not secondary ones, it is

plish the same purposes as set forth in this act. The Commonwealth, by this enactment, hereby preempts and supersedes the

regulation of oil and gas wells as herein defined.

evident that characterization was wrong. In *Sunny Farms,* referencing the title of the ordinance, we expressly stated that "Ordinance 18 was enacted under the township's power granted by Section [2101] of the Second Class Township Code (Code), [53 P.S. § 67101], '[t]o regulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish and other refuse materials within the township.'" [6] 474 A.2d at 60. It cannot be any clearer that the ordinance in *Sunny Farms* was not a zoning ordinance.

Second, as a fall back position, the majority then states regardless of whether it was a zoning ordinance or not, the ordinance in *Sunny Farms* regulated the "placement" of the waste while Ordinance 13 regulates how waste is disposed of, which has nothing to do with aesthetics or property values. In *Sunny Farms,* we held that a township's waste disposal ordinance disallowing the placement of a dump within 500 yards of any dwelling was permissible even if the landfill operator had a zoning occupancy permit to place it to the border of its property. More recently, in *Hunlock Township v. Hunlock Sand and Gravel Corporation,* 601 A.2d 1305 (Pa. Cmwlth.1992), we held that a second class township had the power to enact an ordinance under Section 2101 of the Second Class Township Code to forbid the maintenance, operation and utilization of a sewage sludge composting facility or solid waste facility within a 2,000 feet radius of any residence or residential area. *See also Kavanagh v. London Grove Township,* 33 Pa.Cmwlth. 420, 382 A.2d 148 (1978).

Other than the Ordinance here being less restrictive—because a farmer can still farm up to his property line—and the dump in *Sunny Farms* and the sewage sludge composting facility in *Hunlock* requiring the setback area to remain fallow, I cannot see any difference that a farmer could not dump sewage sludge within 500 yards of the dwelling at issue here and those that precluded dumping in *Sunny Farms* and *Hunlock.* All those ordinances impose setback requirements regulating only "where" the waste is put down, none of which goes to the operation of the site which involves "how and when" waste can be put down.

Third, the majority then states that Ordinance 13 interferes with geological or engineering standards set by DEP, admittedly preempted, and has nothing to do with advancing aesthetics or protecting property values. A similar argument was made in *Sunny Farms.* In that case, the landfill operator also contended that the local 500–yard proximity requirement conflicted with and was an impermissibly more strict engineering or geological standard than that provided for by the regulation of 25 feet [now 50 feet] contained in the state regulation. Finding that a second class township had the authority to enact the regulation under [Section [2101] of the Second Class Township Code, moreover, empowers local government to protect and enhance "the quality of life of its citizens," 474 A.2d at 60], we held that the proximity requirements were not impermissibly more strict than the narrow,

**6.** Not only is it clear from our decision in *Sunny Farms,* the trial court in *Sunny Farms* expressly identified the ordinance as one controlling waste disposal. *Sunny Farms, Ltd. v. North Codorus Township,* 67 Mun.L.R. 183, 1976 WL 17411 (York County 1976). ("That case [*Greater Greensburg Sewage Authority v. Hempfield Township,* 5 Pa.Cmwlth. 495, 291 A.2d 318 (1972)], involved a dispute as to whether a township zoning ordinance prohibiting disposition of sludge from a sewage disposal plant could be applied to a disposal plant the operation of which had been authorized by the Department of Environmental Resources. Although the township legislation there controlled zoning rather than waste disposal as here. . . .")

technical, engineering concerns addressed by DEP regulations because rather than directly setting specific, engineering or geological standards, the Ordinance, consistent with basic land use planning principles, promoted and protected public health, property values and aesthetics. We then went on to quote our Supreme Court in *Franklin Township v. Department of Environmental Resources*, 500 Pa. 1, 6, 452 A.2d 718, 720 (1982), which emphasized a local government's major responsibility in environmental matters as follows:

Aesthetics and environmental well-being are important aspects of the quality of life in our society, and a key role of local government is to promote and protect life's quality for all of its inhabitants.

As to the majority's statement that Ordinance 13 has nothing to do with aesthetics or property values, I would suggest that aesthetics involve more than an historic village green—no matter where you live, if you had to smell another person's sewage sludge all day, you would say that was a matter of aesthetics and that it would adversely affect your property's value, not to mention the health and welfare of the community.

Finally, the majority finds that Section 2101 of the Second Class Township Code does not authorize second class townships to enact supplemental regulations of solid waste, even though we specifically said so in both *Sunny Farms* and *Hunlock*. Section 2101 of the Second Class Township Code provides:

The board of supervisors in the manner authorized by the act of July 7, 1980 (P.L. 380, No. 97), known as the "Solid Waste Management Act," and the act of July 28, 1988 (P.L. 556, No. 101), known as the "Municipal Waste Planning, Recycling and Waste Reduction Act," may prohibit accumulations of ashes, garbage, solid waste and other refuse materials upon private property; including the imposition and collection of reasonable fees and charges for the collection, removal and disposal thereof.

The majority then states that "Townships have always regulated junkyards, littering and trash pickup and Section 2101 simply authorizes the continuation of these worthy efforts. However, it specifically requires that such township regulation be done 'in the manner authorized by [the SWMA].'" (Opinion at 1036.) Under the majority's interpretation, because only the Second Class Township Code has such a provision, all other municipalities could prohibit the disposal of trash and ignore the SWMA altogether—the ultimate reverse preemption. The majority does not recognize that "authorized" is a grant of power coming from the SWMA and has nothing to do with departmental regulations issued pursuant to its grant of power which goes to the operation of the waste site itself, not off-site effects of the waste disposal site.

Recognizing that solid waste sites would be located in second class townships of the Commonwealth, the only sensible interpretation of the General Assembly's reason for enacting this provision is to interpret Section 2101 of the Second Class Township Code as we did in *Sunny Farms* and *Hunlock*, which was that under that provision, second class townships had the ability, other than through land use ordinances, to provide for setback requirements of solid waste disposal sites to insure the health, safety and welfare of the community.

For the reasons set forth in this opinion, I respectfully dissent.

Judge McGINLEY joins in this dissenting opinion.