**COMMONWEALTH of Pennsylvania, OFFICE OF ATTORNEY GENERAL, By Thomas W. Corbett, Jr., Attorney General, Petitioner**

v.

**EAST BRUNSWICK TOWNSHIP, and East Brunswick Township Board of Supervisors, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2009.

Decided Aug. 21, 2009.

Susan L. Bucknum, Sr. Deputy Attorney General, Harrisburg, for petitioner.

James E. Crossen, III, Pottsville, for respondents.

BEFORE: SIMPSON, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The Pennsylvania Attorney General, Thomas W. Corbett, Jr., has commenced an action for declaratory and injunctive relief, seeking to invalidate an ordinance of East Brunswick Township. The Attorney General challenges this ordinance, enacted in 2008 and entitled "Ordinance to Assure Local Public Health and Safety During and After Land Application of Sewage

Sludges" (2008 Ordinance),[1] on two principal grounds. First, he contends that the 2008 Ordinance is preempted by state statutes that regulate sewage sludge and its uses in the Commonwealth. Second, he contends that the 2008 Ordinance interferes with normal agricultural operations, which violates another state law. The Township and its Board of Supervisors (collectively, Township) have filed preliminary objections in the nature of a demurrer to the Attorney General's action. At the heart of this case is whether the Township may regulate the land application of sewage sludge in tandem with the Pennsylvania Department of Environmental Protection (Department).

**Background**

The Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003, regulates the disposal of sewage sludge throughout the Commonwealth, including the application of sewage sludge to land, and it has charged the Department with the responsibility of enforcing the statute's terms. To that end, the Department has adopted comprehensive regulations at 25 Pa.Code, Chapter 271, Subchapter J (25 Pa.Code § 271.901– § 271.933), which, *inter alia,* set standards for the land application of sewage sludge and require a permit for this activity. However, the Department may impose even more stringent standards in a particular case "when necessary to protect public health and the environment from any adverse effect of a pollutant in the sewage sludge." 25 Pa.Code § 271.904.

Jeff Hill, owner of J.C. Hill Tree Farms, Inc. (Hill Farms), fertilizes his 1000–acre tree farm in the Township with sewage

---

1. EAST BRUNSWICK TOWNSHIP, SCHUYLKILL COUNTY, PA. ORDINANCE No.2008–2 (ORDINANCE No.2008– 2).

sludge and does so in accordance with a nutrient management plan approved by the Schuylkill County Conservation District and a permit issued by the Department. In 2006, the Township enacted a sewage sludge ordinance (2006 Ordinance) that prohibited any corporation, such as Hill Farms, from applying sewage sludge to its land, even though the corporation operated under a permit from the Department. At the request of Hill, the Attorney General reviewed the 2006 Ordinance and concluded it was invalid. Accordingly, he instituted an action to invalidate the 2006 Ordinance on several grounds, including the ground that the Township lacked authority to deprive a person of the ability to do business in the form of a corporation.

In response, the Township filed preliminary objections to have the Attorney General's petition for review dismissed. In turn, the Attorney General filed a motion for summary relief, asserting that he was entitled to judgment on the merits, even before an answer was filed. The motions were consolidated. This Court overruled the Township's preliminary objections, but it denied the Attorney General's request for summary relief. *Office of Attorney General v. East Brunswick Township*, 956 A.2d 1100 (Pa.Cmwlth.2008) (*East Brunswick I*). Summary relief was denied because a question central to the Attorney General's theory for relief, *i.e.*, whether the use of sewage sludge was a "normal agricultural operation," was not a pure question of law but needed to be established by evidence. *Id.* at 1115–1116.[2] This Court issued this ruling on September 23, 2008, unaware that the 2006 Ordinance had been repealed on September 4, 2008. On that same date, the Township replaced the 2006 Ordinance with the 2008 Ordinance, which is under review in this proceeding.

Notably, the 2008 Ordinance does not prohibit corporations, such as Hill Farms, from using sewage sludge to fertilize land, as did the 2006 Ordinance. The 2008 Ordinance does, however, establish fee, bond, chemical testing, notice and signage requirements that must be satisfied in order to apply sewage sludge to land in the Township.[3]

Again, Jeff Hill requested the Attorney General to review the new ordinance. The Attorney General did so and then filed the instant amended petition for review.[4] The petition contains six counts. Each count asserts that the 2008 Ordinance is unauthorized or preempted under a different statute: (1) the Agricultural, Communities and Rural Environment (ACRE) Act, 3 Pa.C.S. §§ 311–318,[5] in Count I; (2) the Solid Waste Management Act (SWMA) in Count II; (3) the Nutrient Management Act, 3 Pa.C.S. §§ 501–522 in Count III; (4) the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202 in Count IV; (5) the Agricultural Area Security Law, Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 901–915 in Count V; and (6) the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701 in Count VI.

The Attorney General's petition details the benefits of using sewage sludge to

---

**2.** Notably, the Court did not hold that the Attorney General's pleading was inadequate in this regard.

**3.** The requirements of this 2008 Ordinance are discussed in greater detail *infra*.

**4.** On January 13, 2009, this Court granted leave to the Attorney General to file the instant amended petition for review, because its original petition for review had become moot.

**5.** The ACRE Act is Chapter 3 of the Agriculture Code, Title 3 of the consolidated statutes.

improve soil quality, forest productivity and crop growth. The use of sewage sludge to reconstitute soil is a well-established agricultural practice that is encouraged by the U.S. Environmental Protection Agency. In the past ten years, the Department has approved approximately 827 farms in Pennsylvania as suitable sites for the application of sewage sludge, one of which is Hill Farms. Amended Petition for Review, ¶ 46.

To apply sewage sludge to land in Pennsylvania, the generator of the sludge must obtain a general permit from the Department that will allow it to make any number of land applications. 25 Pa.Code § 271.902 ("Permits and direct enforceability"). Most generators in Pennsylvania are municipal wastewater treatment plants; they generate over 300,000 tons of sewage sludge each year. Amended Petition for Review, ¶¶ 33, 53. Other generators are haulers of sewage from residential septic tanks, and they must also obtain a permit before this type of sewage may be used as fertilizer. Amended Petition for Review, ¶ 54. The Department does not issue a permit until the generator demonstrates by testing that its sewage sludge meets certain quality standards. 25 Pa.Code §§ 271.902(a)(2).[6]

Sewage sludge is categorized as exceptional, non-exceptional or residential, *i.e.,* derived from on-lot septic tanks. Each category of sludge is subject to different regulatory requirements. Exceptional quality sewage sludge is that which contains low levels of "pollutants" and "pathogens." 25 Pa.Code § 271.911(b)(1). The application of exceptional quality sludge to land is not regulated, except where the Department determines regulation is "needed to protect public health and the environment." 25 Pa.Code § 271.911(d). However, the generator must give the Department 24–hour advance notice of its intent to apply such sludge to land. More stringent regulations apply to non-exceptional and residential septage;[7] these categories of sewage sludge cannot be applied until the Department reviews and approves the proposed site prior to the first application. 25 Pa.Code § 271.913(g)(1) (requiring notice to the Department at least 30 days prior to the first application of sewage sludge at a particular location); Attorney General Brief, Exhibit 1, Exh. B at 2. Before any approvals are given, the Department notifies the municipality where the proposed site is located, and it also notifies the municipality of the Department's subsequent decision on site suitability. Attorney General Brief, Exhibit 1, Exh. B at 2. The Department's regulation is on-going, requiring testing and reporting from general permit holders for all categories of sludge. 25 Pa.Code § 271.918 ("Recordkeeping") and § 271.919 ("Reporting"). The generator's applications and reports, as well as the Department's actions thereon are public records available to municipalities such as the Township. 25 Pa.Code § 271.5(a) ("Public records and confidential information").

The Attorney General contends that the real purpose of the 2008 Ordinance is to render the land application of sewage sludge so costly that it cannot take place in the Township. The generator of sewage sludge bears most, if not all, of the cost of

---

6. Section 271.902(a)(2) provides that in order to obtain a land application permit, the generator must have a permit to operate its facility from which the Department can determine that the sewage sludge meets certain standards.

7. These types of sewage sludge are subject to the "general requirements" found in 25 Pa. Code § 271.913 and the "management practices" found in 25 Pa.Code § 271.915.

land application. Amended Petition for Review, ¶ 70. Currently, the average cost to dispose of sewage sludge is $40 per wet ton and $145 per dry ton. Typically, in a single application, generators apply 22 wet tons per acre. Amended Petition for Review, ¶ 78. Accordingly, a 100–acre farm requires 2,200 wet tons of sewage sludge per application at a cost of $88,000. The bonding and testing requirements in the 2008 Ordinance would add $223,800 to this cost, for a total of $311,800. The 2008 Ordinance raises the cost to fertilize a 100–acre farm with 500 dry tons of sewage sludge from $72,500 to $162,000. Amended Petition for Review, ¶¶ 82–85. On October 3, 2008, a Republican Herald newspaper article quoted a Township Supervisor as saying "[t]he object is you make it as difficult and expensive as you can so they don't attempt it." Amended Petition for Review, Exhibit D.

The Township has filed preliminary objections in the nature of a demurrer to each count in the Attorney General's amended petition for review. The Township contends that its 2008 Ordinance is fully consistent with Pennsylvania law, pointing out that the standards and terms in the 2008 Ordinance are the same as those used in the SWMA.[8] The Township also asserts that because the 2008 Ordinance protects the Township residents "from exposure to sewage sludge," it is public health and welfare legislation expressly authorized by the Second Class Township Code and by the SWMA. Preliminary Objections ¶ 17. Finally, the Township contends it is in the best position to assure compliance with the Depart-

ment's regulations. It can respond quickly to a violation, whereas the Department may, or may not, respond with equal alacrity. The Township requests the Court to dismiss the amended petition for review.

In addition, the parties have each filed a motion to strike. The Township has moved to strike exhibits attached to the Attorney General's brief, and the Attorney General has moved to strike the Township's reply brief.

### Motions to Strike

■ We begin with the Township's motion to strike exhibits attached to the Attorney General's brief filed in opposition to the Township's preliminary objections. These exhibits include, as Exhibit 1, an affidavit of Dennis C. Wilson, water program specialist with the Department, together with certain forms used in the Department's sewage sludge program. Exhibit 2 consists of an adjudication of the Pennsylvania Environmental Hearing Board issued in *Douglass Township v. Commonwealth*, EHB Docket No. 2007–154–L (April 16, 2009). The Township asserts that because these exhibits were not attached to the amended petition for review, they must be stricken. In addition, Exhibit 2, the adjudication of the Environmental Hearing Board, should be stricken because it has no precedential value. The Attorney General replies that the materials in Exhibit 1 are merely illustrative of the factual averments in its amended petition for review and that Exhibit 2, an administrative agency adjudication, may be considered by this Court, even though it is not binding.

---

**8.** The Township expounds at length on 40 C.F.R. § 503.5, a federal regulation that provides, in relevant part, that it does not preclude a "a State *or political subdivision thereof* or interstate agency from imposing requirements for the use or disposal of sewage sludge more stringent than the require-

ments in this part or from imposing additional requirements for the use or disposal of sewage sludge." However, this regulation, adopted by the EPA under authority of the Clean Water Act, 33 U.S.C. §§ 1251–1387, is irrelevant to whether a local ordinance has been preempted by a state statute.

We deny the Township's motion to strike. Writings must be attached to a pleading where the writing is the basis of the action, such as an action to enforce a written contract. PA. R.C.P. No. 1019(i); *Feigley v. Department of Corrections,* 872 A.2d 189, 195 (Pa.Cmwlth.2005).[9] The exhibits attached to the Attorney General's brief are illustrative and provided for the convenience of the Court. In no way do they amend the pleading or constitute the basis for the action.

The Attorney General has filed a motion to strike the Township's reply brief as untimely. The Attorney General filed its brief in opposition to preliminary objections on May 1, 2009. Under PA. R.A.P. 2185(a), which is applicable to original jurisdiction proceedings as provided in PA. R.A.P. 106, the Township's reply brief was due no later than May 18, 2009.[10] The Township did not file its reply brief until May 21, 2009, which was untimely. Accordingly, the Township's reply brief must be stricken from the record.

We turn, next, to the Township's preliminary objections.

### Standards for Demurrer

▮▮▮ A demurrer tests the legal sufficiency of a complaint. *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company,* 588 Pa. 470, 480, 905 A.2d 462, 468 (2006). When ruling on preliminary objections in the nature of a demurrer, this Court must accept as true every well-pleaded material fact set forth in the complaint as well as all inferences reasonably deducible therefrom, but we are not required to accept as true conclusions of law, unwarranted inferences from the facts, argumentative allegations or expressions of opinion. *Bundy v. Beard,* 924 A.2d 723, 725 n. 2 (Pa.Cmwlth.2007). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible, and any doubt should be resolved in favor of overruling the demurrer. Id.

The principal legal question in ruling on the Township's demurrer is whether the 2008 Ordinance is preempted, as asserted by the Attorney General, or not, as asserted by the Township. In evaluating whether the 2008 Ordinance is preempted by state law, this Court applies the following 5–part test:

> (1) Does the [2008 Ordinance] conflict with the state law, either because of conflicting policies or operational effect, that is, does the [2008 Ordinance] forbid what the legislature has permitted?

---

**9.** Rule 1019(i) provides in relevant part:
> When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . PA. R.C.P No. 1019(i).

**10.** These rules provide, in relevant part, as follows:
> Unless otherwise prescribed by these rules the practice and procedure in matters brought before an appellate court within its original jurisdiction shall be in accordance with the appropriate general rules applicable to practice and procedure in the courts of common pleas, so far as they may be applied.

PA. R.A.P. 106.
The appellate rules do contain time limitations for filing briefs; therefore the appellate rules apply to this case. Specifically, Rule 2185(a) provides, in relevant part, that "[a] party may serve and file a reply brief permitted by these rules within 14 days after service of the preceding brief. . . ." PA. R.A.P. 2185(a)(1). Further, pursuant to Rule 121(e), three days are added to the prescribed period if the other party's brief was served by mail, as was the case here. PA. R.A.P. 121(e). Accordingly, the Township had 17 days to file its reply brief.

(2) Was the state law intended expressly or impliedly to be exclusive in the field?

(3) Does the subject matter reflect a need for uniformity?

(4) *Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?*

(5) Does the [2008 Ordinance] stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?

*Liverpool Township v. Stephens*, 900 A.2d 1030, 1033 (Pa.Cmwlth.2006) (emphasis added). These principles govern our evaluation of the Township's preliminary objections.

### 2008 Ordinance

According to the Township, the 2008 Ordinance regulates the use of sewage sludge in ways that complement, not conflict with, the SWMA and, thus, is not susceptible to preemption. In order to address this contention, which is central to the Township's demurrer, we first summarize the substantive provisions of the 2008 Ordinance.[11]

Section III and Section IV of the 2008 Ordinance are designed to eliminate a conflict with the SWMA. Section III specifies that the 2008 Ordinance's terms shall have the meanings set forth in the SWMA and in the Department's regulations. ORDINANCE No.2008–2, § III. Section IV requires sewage sludge application or storage to be done in accordance with Department permits and regulations. ORDINANCE No.2008–2, § IV. Stated otherwise, the Township has made the SWMA

and its implementing regulations a law of the Township.

Section V of the 2008 Ordinance imposes a series of notice requirements upon any person intending to apply sewage sludge to land. Thirty days prior to a land application of sewage sludge, this person must provide, *inter alia*, the following information to the Township: a copy of the notification required by 25 Pa.Code § 271.913(g) (notification to the Department, county conservation district and adjacent landowners); a copy of the written consent of the owner of the land receiving the sewage sludge, as required by the Department; proof that written notification has been given to adjacent landowners; a copy of the applicable permits issued by the Department; the identity of the person who prepared the sludge; a copy of the most recent sludge analysis done under 25 Pa.Code § 275.207(a); a copy of the most recent annual operating report submitted pursuant to Department regulation; and an executed "Consent of Owner to Access by Township" form. ORDINANCE No.2008–2, § V(A). Five days before each land application begins, this person must give the Township a bond in the amount of $500 for each acre on which sludge will be applied; an emergency plan; and the date, time and amount of sludge to be applied within the Township. ORDINANCE No.2008–2, § V(B)(1–3). The Township will release the security three years after the last application of sewage sludge, assuming this person has complied with all applicable laws and the 2008 Ordinance.

Section VI of the 2008 Ordinance establishes fees. A "Public Safety and Envi-

---

**11.** Sections I and II provide the purposes and title of the 2008 Ordinance. Section XI authorizes the Township Board of Supervisors to enforce the 2008 Ordinance. Section XII provides that the provisions of the Ordinance are severable, meaning that if any section, clause, sentence, part or provision is illegal, it does not invalidate any other sections, clauses, sentences, parts or provisions.

ronmental Data Assessment Fee" of $79 is imposed upon each ton of sewage that is applied. ORDINANCE No.2008–2, § VI. The fee funds the Township's costs of enforcing the ordinance, which include inspections, testing of sewage sludge, post-application testing of water and soil for two years and record maintenance.

Section VII of the 2008 Ordinance specifies reporting requirements. These include, *inter alia*, a copy of the generator's daily operational records and the annual operating report required by Department regulations to be remitted to the Township; reports on the concentration of various pollutants in the sewage sludge; and a report on how various Department requirements were met. ORDINANCE No.2008–2, § VII. The Township will retain these reports for twenty years.

Section VIII regulates the hours and manner of sewage sludge application. Entitled "Protection of Public Health and Welfare," Section VIII restricts application to weekdays between 8:00 a.m. and dusk. ORDINANCE No.2008–2, § VIII(A). Any vehicle transporting sludge must contain a sign identifying the hauler, generator and the cargo. Sludge may not be applied in any manner or location that will adversely affect animal health, the food chain or drinking water supply. If sewage sludge is applied to lands abutting a public road, the applicant or landowner must place clearly visible signs written in both English and Spanish at intervals of 50 feet along the road stating "WARNING" in red and prohibiting access to such lands. ORDINANCE No.2008–2, § VIII(c). Further, if

sewage sludge is applied to land that is "accessible" to the public, the area must be fenced or otherwise barricaded. ORDINANCE No.2008–2, § VIII(D).

Section IX of the 2008 Ordinance establishes the Township's inspection rights. It authorizes the Township to inspect land slated for fertilization by sewage sludge for the purpose of identifying "any factors" relating to public health and safety not otherwise addressed in the Department regulations or permit. ORDINANCE No.2008–2, § IX (A). The Township's inspector will oversee the actual spreading of the sewage sludge to assure proper application and will collect and analyze sewage sludge samples.

Section X creates sanctions. Section X makes it a summary offense punishable by a fine up to $1,000 per violation and/or imprisonment to violate the 2008 Ordinance. Each day a violation exists is a separate offense and each section that is violated is a separate offense. ORDINANCE No.2008–2, § X(A–D).

## Count I—Violation of the Agricultural, Communities and Rural Environment (ACRE) Act

The Legislature has invested the Attorney General with responsibility to initiate litigation to enjoin the enforcement of a local ordinance that interferes with a "normal agricultural operation." Section 315(a) of the ACRE Act, 3 Pa.C.S. § 315(a).[12] An "unauthorized local ordinance," which may trigger the Attorney

---

12. It states:
   The Attorney General may bring an action against the local government unit in Commonwealth Court to invalidate the unauthorized local ordinance or enjoin the enforcement of the unauthorized local ordinance. 3 Pa.C.S. § 315(a). Further, the ACRE Act provides:

An owner or operator of a normal agricultural operation may request the Attorney General to review a local ordinance believed to be an unauthorized local ordinance and to consider whether to bring legal action under section 315(a) (relating to right of action).
3 Pa.C.S. § 314(a).

General's litigation, is one that does any of the following:

(1) Prohibits or limits a normal agricultural operation unless the local government unit:

(i) has expressed or implied authority under State law to adopt the ordinance; and

(ii) is not prohibited or preempted under State law from adopting the ordinance.

(2) Restricts or limits the ownership structure of a normal agricultural operation.

3 Pa.C.S. § 312. Section 312 of the ACRE Act incorporates by reference the definition of "normal agricultural operation" found in Section 2 of the Right–to–Farm Act, Act of June 10, 1982, P.L. 454, *as amended,* 3 P.S. § 952.[13]

The Attorney General alleges that the application of sewage sludge to land is a "normal agricultural operation." Amended Petition for Review, ¶ 47. Further, he asserts that the substantive provisions in the 2008 Ordinance, particularly the fees it assesses and the bonds it requires, severely limit, if not prohibit, the ability of a generator to apply sewage sludge to land in the Township. These limits in the 2008 Ordinance violate Section 312 of the

ACRE Act because the Township had no "expressed or implied authority under State law" to enact these limits. 3 Pa.C.S. § 312. Thus, Count I seeks to have the 2008 Ordinance, in its entirety, declared invalid under the ACRE Act.

The Township seeks a dismissal of Count I. It contends that application of sewage sludge to agricultural land is not a "normal agricultural operation," but it acknowledges that this is a question to be resolved by evidence, not law. *East Brunswick I,* 956 A.2d at 1115–1116. Indeed, for purposes of considering the Township's demurrer, we must presume that the application of sewage sludge to farmland *is* a normal agricultural operation. This leaves the legal question of whether the Township was authorized to enact the limits on a normal agricultural operation that are contained in the 2008 Ordinance.

The Attorney General contends that the substantive provisions of the 2008 Ordinance are pre-empted and, thus, not authorized for purposes of the exception in Section 312 of the ACRE Act. Likewise, the Township did not have authority to enact the 2008 Ordinance because Section 1506 of the Second Class Township Code forbids the enactment of an ordinance that

13. Section 2 of the Right–to–Farm Act provides the following definition:

"NORMAL AGRICULTURAL OPERATION." *The activities, practices, equipment and procedures that farmers adopt, use or engage in* the production and preparation for market of poultry, livestock and their products and in *the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops* and commodities and is:

(1) not less than ten contiguous acres in area; or

(2) less than ten contiguous acres in area but has an anticipated yearly gross income of at least $10,000.

The term includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry. Use of equipment shall include machinery designed and used for agricultural operations, including, but not limited to, crop dryers, feed grinders, saw mills, hammer mills, refrigeration equipment, bins and related equipment used to store or prepare crops for marketing and those items of agricultural equipment and machinery defined by the act of December 12, 1994 (P.L. 944, No.134), known as the Farm Safety and Occupational Health Act. Custom work shall be considered a normal farming practice.

3 P.S. § 952 (emphasis added).

is inconsistent with the "laws of this Commonwealth." 53 P.S. § 66506.[14] The Attorney General contends that the fees, bonds, notice and signage requirements in the 2008 Ordinance are inconsistent with the SWMA. Thus, the 2008 Ordinance is preempted by the SWMA and, at the same time, unauthorized by reason of the Second Class Township Code.

In sum, if the 2008 Ordinance is preempted by the SWMA (Count II), then the Attorney General has stated a claim in Count I, as well as in Count VI. For the reasons set forth below, we conclude that the Township did *not* have authority to adopt many, if not all, of the provisions of the 2008 Ordinance by reason of the SWMA. That determination requires that we overrule the Township's preliminary objections to Counts I (the ACRE Act), II (the SWMA) and VI (the Second Class Township Code).

### Count II—Violation of the SWMA

■ The SWMA regulates the disposal of every type of solid waste in the Commonwealth, including sewage sludge. Section 102 provides, in relevant part, as follows:

> The Legislature hereby determines, declares and finds that, since improper and inadequate solid waste practices create public health hazards, environmental pollution, and economic loss, and cause irreparable harm to the public health,

safety and welfare, it is the purpose of this act to:

> (1) *establish and maintain a cooperative State and local program of planning and technical and financial assistance for comprehensive solid waste management;*
>
> * * *
>
> (3) require permits for the operation of municipal and residual waste processing and disposal systems, licenses for the transportation of hazardous waste and permits for hazardous waste storage, treatment, and disposal;
>
> (4) protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes[.]

35 P.S. § 6018.102 (emphasis added). The Township asserts the 2008 Ordinance is an example of a "local program of . . . solid waste management" that is expressly authorized by Section 102 of SWMA. 35 P.S. § 6018.102(1). Accordingly, it argues that the Attorney General has failed to state a claim of preemption by reason of the SWMA.

The Township concedes, as it must, that local ordinances that attempt to regulate the disposal of sewage sludge have not fared well under preemption challenges. The key precedent from this Court is *Liv-*

---

**14.** Section 1506 of the Second Class Township Code provides:

> The board of supervisors may make and adopt any *ordinances,* bylaws, rules and regulations *not inconsistent with or restrained by* the Constitution and *laws of this Commonwealth* necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government, health and welfare of the township and its citizens, trade, commerce and manufacturers.

53 P.S. § 66506 (emphasis added). The Township contends that it may adopt any legislation to advance the "health and welfare" of its citizens. This broad reading of Section 1506 fails to appreciate that an ordinance "conflicts" with state law if it undermines a comprehensive state regulatory regime. This reading would allow, for example, a township to adopt its own version of the Vehicle Code and undertake its own program of driver licensing, an absurd result.

erpool Township v. Stephens, 900 A.2d 1030 (Pa.Cmwlth.2006).

In *Liverpool Township*, the township enacted an ordinance mandating that a landowner obtain a township permit before applying sewage sludge to agricultural land. The ordinance contained requirements that conflicted with the SWMA. For example, the ordinance allowed spreading sewage sludge up to a boundary line, but the SWMA prohibited spreading sludge within 50 yards of a boundary line. In addition, the ordinance prohibited spreading sludge within 500 yards of any building that might be occupied from time to time while the SWMA prohibited spreading sludge within 300 feet of a house that was actually occupied. These conflicts rendered the ordinance preempted. In addition, the ordinance impermissibly set up a permit system that was duplicative of the state permit system. This Court ruled that the township could not regulate the disposal of sewage sludge, reasoning as follows:

> Ordinance 13 not only conflicts with the SWMA, it also interferes with the *General Assembly's goal of a uniform and comprehensive scheme of regulation of municipal sewage treatment that leaves no room for side-by-side municipal regulation....* Balkanized regulation of the disposal of municipal sewage sludge would stand as an obstacle to the SWMA's comprehensive regulatory scheme.

*Liverpool Township*, 900 A.2d at 1038 (emphasis added).

*Liverpool Township* explained, nevertheless, that a municipality may regulate solid waste management in ways that do not replicate the Department's efforts to advance what this Court has called "geological standards," *i.e.*, standards that affect air and water. *Id.* at 1036. In *Sunny Farms, Ltd. v. North Codorus Township*, 81 Pa.Cmwlth. 371, 474 A.2d 56 (1984), this Court held that Sunny Farms could be enjoined from operating a hazardous waste landfill within 500 yards of homes in the township, in accordance with a local ordinance. The Court explained that a "local municipality cannot set geological or engineering standards stricter than those established by [the Department] for issuance of its permit." Id. at 60. However, a municipality could set standards dealing with land use planning, *i.e.*, zoning, such as where the landfill could be located. On the basis of *Sunny Farms*, we held that the SWMA does not preempt zoning regulation; however, when a township attempts to regulate "how, when and where sewage waste may be used to fertilize farmland, it sets 'geological standards'" that violate the SWMA. *Liverpool Township*, 900 A.2d at 1036.[15]

In addition, a township is permitted to "prohibit accumulations of ashes, garbage, solid waste and other refuse materials upon private property" as authorized by the SWMA. 53 P.S. § 67101. In *Liverpool Township*, this Court explained that Section 2101 of the Second Class Township Code authorizes a township to regulate junkyards, littering and trash pickup, but does not allow a township to establish "standards for the application of municipal sewage sludge to farmland that differ from those in the SWMA." *Liverpool Township*, 900 A.2d at 1036.

Persuasive, but not binding, precedent is found in *Synagro–WWT, Inc. v. Rush Township*, 299 F.Supp.2d 410 (M.D.Pa.

---

**15.** We pointed out that even if a hazardous waste dump met all requirements established in the SWMA, a township would not be required to allow its placement in a residential district or in the middle of a historic village green. *Liverpool Township,* 900 A.2d at 1036 n. 17.

2003). In that case, the federal district court considered an ordinance that imposed numerous requirements on the transport and application of sewage sludge within the township, which Synagro challenged on preemption grounds. In considering this preemption claim, the federal court stated that "when the land use in question is the management or disposal of solid waste, most local ordinances are preempted by [SWMA]." *Id.* at 419 (alteration in original). The court further explained that certain local regulations may be permissible but they "cannot impose onerous requirements that stand as obstacles to the accomplishment and execution of the full purposes and objectives of the legislature." *Id.* (internal quotation marks omitted).

In accordance with this analytical framework, the court held that the provisions of the ordinance that mandated groundwater tests to be performed by qualified hydrologists and the hours for trucking activities were not preempted. On the other hand, the court found the ordinance's permit requirement and enforcement provisions, which duplicated the Department's permit system, were preempted. The district court explained that the township had two available remedies: it could inform the Department of any possible SWMA violations so that the Department could inspect the site and take enforcement action pursuant to its regulations, or the township could bring an action in equity for an injunction to restrain violations of the

SWMA as provided for in Section 604 of SWMA.[16] *Id.* at 422.

The Township argues that the holdings in *Liverpool Township* and *Synagro* support the grant of its preliminary objections. It contends that the notification, bonding and fee requirements in the 2008 Ordinance do not conflict with the SWMA, as was the problem with the ordinance in *Liverpool Township*. Further, the Department's regulations in Chapter 271 do not account for the fact that children on bikes and non-English speaking farm workers are accustomed to traversing farmers' fields throughout the Township and could be exposed to the sewage sludge if not warned against doing so. The Township argues that the additional testing required by the 2008 Ordinance and the regulation of hours during which sewage sludge may be applied to land have been specifically held to be authorized by the SWMA. *Synagro*, 299 F.Supp.2d at 421.

The Attorney General argues that the Township's vigorous program of regulating sewage sludge is itself an impediment to the comprehensive scheme established in the SWMA. The Township assigns too much significance to the legislative expression of cooperation in Section 102 of the SWMA. The Township's signage, notification, testing, fees and bonding requirements far exceed what is required in the Department's regulations, and, therefore, conflict with the SWMA.[17] In sum, the

---

**16.** It provides in relevant part:

> (b) In addition to any other remedies provided for in this act ... upon relation of the solicitor of any municipality affected, an action in equity may be brought in a court of competent jurisdiction for an injunction to restrain any and all violations of this act or the rules and regulations promulgated hereunder, or to restrain any public nuisance or detriment to health.

35 P.S. § 6018.604(b).

**17.** According to the Attorney General, the bond requirement in Section V and testing fees in Section VI of the 2008 Ordinance are preempted because they exceed what is required in Title 25 of the Pennsylvania Code and have been established to render the practice cost prohibitive. The testing requirement in Section VI is preempted because the Department has its own testing, monitoring and reporting requirements. The post-application information requirements found in Section

2008 Ordinance undermines, rather than advances, the goals of the SWMA.

In further support, the Attorney General brings to our attention a recent decision of the Environmental Hearing Board in *Douglass Township v. Commonwealth,* EHB Docket No. 2007–154–L (April 16, 2009). There, the Department approved a particular farm as a site for land application of sewage sludge. The Township challenged the site approval, asserting that it should have included conditions that the generator provide advance notice of sewage sludge application to the Township; allow a Township representative to be present during sewage sludge application; and supply the Township with a copy of all documents supplied to the Department. The Board denied the request, noting, *inter alia,* that the Township failed to produce any evidence that its "joint oversight at the site would add any value, is necessary, or would be anything other than superfluous." Id. at 6. The Board explained that the Department's "duty [under the SWMA] to cooperate [with municipalities] does not equate to a duty to give the Township oversight authority." *Id.* at 7.

■ *Liverpool Township* and *Synagro* teach that a township cannot duplicate the regulatory regime established in the SWMA and cannot impose more stringent requirements than the SWMA. On the other hand, a township can address land use issues in a zoning ordinance because zoning is a public health and safety issue not addressed in the SWMA. The 2008 Ordinance imposes notice, testing, and operational requirements upon the land application of sewage sludge. Requirements that are redundant of or stricter than those in the SWMA are preempted.

*Synagro* held that regulation of hours for sludge transportation is an appropriate subject for local regulation. The Township argues we must adhere to the *Synagro* holding in this regard; however, *Synagro* is not binding on this Court. *Liverpool Township,* which is binding, explained that local regulation cannot impede a comprehensive, statewide scheme of regulation. *Liverpool Township,* 900 A.2d at 1038. It may be that the Township is not preempted from regulating the hours during which sewage sludge may be applied to land. At this stage, however, we have to assume that regulating hours, as the Attorney General avers, will effectively make it impossible to use sewage sludge in the Township. For example, there may be reasons why it is preferable to apply sewage sludge to land in the evening hours of the day; this is a mixed question of fact and law. Further, *Synagro* dealt with sludge transportation, while limiting hours for *application* more directly impacts the actual operation of sewage sludge disposal. It is not true, as the Township argues, that the holding in *Synagro* has given it a blank check to regulate the hours of sewage sludge application.

■ The SWMA does not authorize the Township to set up its own sewage sludge

---

VII are preempted because the Department already requires identical information which it makes available for public inspection. Section VII also requires information after each land application, which exceeds Department requirements. The requirements setting the hours of operation in Section VIII are preempted because they regulate the operations of sludge land application, which is regulated by the SWMA. Requirements in Section VIII pertaining to the labeling of vehicles transporting sewage sludge, posting of notices on the property line, and protection of animal health, food chain and drinking water are preempted because they are duplicative of similar requirements in Title 25, Chapter 271. The fencing requirement is preempted because it exceeds the Department's regulations in Chapter 271.

police force to enforce the SWMA. The Township cannot establish a comprehensive scheme of sewage sludge regulation to replicate the one set forth in the SWMA and the Department's regulations at 25 Pa.Code, Chapter 271. As noted in *Synagro*, the Township has a remedy in Section 604 of the SWMA to enjoin violations of the SWMA. *Synagro*, 299 F.Supp.2d at 423. It may also intervene in the site approval proceeding, as did Douglass Township. The axiom *expressio unius est exclusio alterius* provides that the express inclusion of one thing in a statute implies the exclusion of another, meaning that the omission of other remedies by the legislature was deliberate. *Veterans of Foreign Wars Post 1989 v. Indiana County Board of Assessment Appeals*, 954 A.2d 100, 106 (Pa.Cmwlth.2008). The remedies provided by the legislature in the SWMA preclude other forms of "self help" by the Township.

The Attorney General has stated a cause of action in Count II. To prevail with respect to every provision of the 2008 Ordinance will require evidence; at this point, however, we must presume all facts pled in the amended petition for review to be true. Accordingly, we overrule the Township's demurrer to Count II.

### Count III—Violation of the Nutrient Management Act

The Nutrient Management Act regulates fertilizers produced from, *inter alia*, sewage sludge. It has charged the Department and the Pennsylvania State Conservation Commission with authority over the use of "nutrients," which are defined as "livestock and poultry manures, compost as fertilizer, commercially manufactured chemical fertilizers, *sewage sludge* or combinations thereof." 3 Pa.C.S. § 503 (emphasis added). The Commission has adopted regulations governing the storage, handling and land application of nutrients.

Section 519 of the Nutrient Management Act is entitled "Preemption of local ordinances" and provides in relevant part:

(a) General.—This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management and odor management, to the exclusion of all local regulations.

(b) Nutrient management.—No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

\* \* \*

(d) Stricter requirements.—Nothing in this chapter shall prevent a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations *which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter.* No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa.C.S. § 519 (emphasis added). The Attorney General contends that the provisions of the 2008 Ordinance that impose notification, bonding, testing fee, signage, and access restriction requirements, and the provisions that authorize the Township

to conduct inspections, testing, monitoring and investigations, conflict with and are "more stringent" than those in the Nutrient Management Act and in the Commission's regulations.[18] As such, they are preempted.

The Township asserts that the Nutrient Management Act does not apply because it deals with nutrient management plans and odor management plans, subjects not even addressed in the 2008 Ordinance. The Township also asserts that the Nutrient Management Act does not deal with the "post-application consequences" of land application of sewage sludge and, thus, does not preempt a municipal ordinance that addresses these consequences.[19] Township Brief at 21. In any case, the Township contends that the 2008 Ordinance is consistent with the goals of the Nutrient Management Act.

■ Hill Farms has an approved nutrient management plan, which regulates the amount and frequency of nutrient application to its land. Amended Petition for Review, ¶ 100. The Nutrient Management Act specifically includes sewage sludge in the definition of nutrient, thereby bringing any land application of sewage sludge within the purview of the act. It is unclear what the Township means by "post-application consequences." However, the Nutrient Management Act addresses the effect of nutrient application on surface and ground water quality, which necessarily refers to "post-application" soil and water quality. The Township is simply incorrect that the act addresses only nutrient and odor issues. The Township's preliminary objection to Count III is based upon an incorrect understanding of the Nutrient Management Act and is overruled.

## Count IV—Violation of the Municipalities Planning Code

The Township admits that the 2008 Ordinance is not a zoning ordinance adopted under authority of the Municipalities Planning Code. Accordingly, the Attorney General agrees to a dismissal of Count IV and no further discussion is required.

## Count V—Violation of the Agricultural Area Security Law

■ The Agricultural Area Security Law requires the Township to encourage farming. Section 11(a) states:

*Every municipality* or political subdivision within which an agricultural security area is created *shall encourage the continuity, development and viability of agriculture* within such an area by not enacting local laws or ordinances which would unreasonably restrict farm structures or farm practices within the area in contravention of the purposes of this act unless such restrictions or regulations bear a direct relationship to the public health or safety.

3 P.S. § 911(a) (emphasis added). In Count V, the Attorney General asserts that the 2008 Ordinance renders the practice of using sewage sludge to fertilize land

---

**18.** For example, the regulations authorize state conservation districts to review and approve nutrient management plans; prescribe nutrient land application procedures; provide for soil testing of biosolids applied to agricultural lands; and provide that the Commission, state conservation districts and the Pennsylvania Department of Agriculture are responsible for taking enforcement actions for violations of the Nutrient Management Act and the regulations.

**19.** It cites *Synagro*, wherein the court stated that if the Nutrient Management Act does not regulate mine reclamation activities, the Nutrient Management Act cannot preempt municipal regulation of those activities. *Synagro*, 299 F.Supp.2d at 417.

cost prohibitive. As such, it violates the Agricultural Area Security Law.

The Township asserts that the 2008 Ordinance does not restrict "farm practices," as long as these practices conform to the Department's regulations in Chapter 271. The Township points to the legislative findings which make clear that the main concern of the Agricultural Area Security Law is encroachment of urban development on farmland.[20] The Township argues that the 2008 Ordinance safeguards the agricultural economy and resources within the Township, not limits them.

However, the Attorney General avers that the land application of sewage sludge is a "farm practice" and that the 2008 Ordinance renders the use of sewage sludge cost prohibitive. We must presume those facts to be true. Therefore, we overrule the Township's preliminary objection to Count V.

### Count VI—Violation of the Second Class Township Code

Because we have overruled the Township's preliminary objection to Count II, we must also overrule its objection to Count VI. The Township is not authorized to adopt legislation that is inconsistent with the SWMA, as it has done in the 2008 Ordinance.

### Conclusion

The Township's entire 2008 Ordinance is being challenged. Some aspects of the 2008 Ordinance may be sustained, depending on what record is developed. However, the parallel local scheme of regulation is fundamentally flawed. With the exception of Count IV, the Attorney General has stated a claim in each of the Counts in its amended petition for review. Accordingly,

the Township's preliminary objections are overruled.

Judge Cohn Jubelirer did not participate in the decision in this case.

### ORDER

AND NOW, this 21st day of August, 2009, the preliminary objection filed by East Brunswick Township and the East Brunswick Township Board of Supervisors to Count IV of the amended petition for review filed by the Office of Attorney General is hereby SUSTAINED. The remainder of the preliminary objections are OVERRULED. The Township's motion to strike exhibits is DENIED. The Attorney General's motion to strike the Township's reply brief as untimely is GRANTED. An answer to the amended petition for review is due within 30 days.

---

**20.** Section 2, entitled "Statement of legislative findings," discusses urban development and the desire to protect agricultural land. 3 P.S. § 902.