HUCKLEBERRY ASSOCIATES, INC., Haines and Kibblehouse, Inc., and Lehigh Valley Site Contractors, Inc.

v.

SOUTH WHITEHALL TOWNSHIP ZONING HEARING BOARD, South Whitehall Township, Neighbor Property Owners

Appeal of: Huckleberry Associates, Inc.

Commonwealth Court of Pennsylvania.

Argued June 15, 2015.

Decided July 15, 2015.

Timothy J. Siegfried, Allentown, for appellant.

Jennifer R. Alderfer, Allentown, for appellee South Whitehall Township.

Maria C. Mullane, Allentown, for appellee South Whitehall Township Zoning Hearing Board.

BEFORE: DAN PELLEGRINI, President Judge, and BONNIE BRIGANCE LEADBETTER, Judge (P.), and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Senior Judge ROCHELLE S. FRIEDMAN.

Huckleberry Associates, Inc., Haines and Kibblehouse, Inc., and Lehigh Valley Site Contractors, Inc. (together, Huckleberry) appeal from the August 26, 2014, order of the Court of Common Pleas of Lehigh County (trial court) affirming the decision of the South Whitehall Township Zoning Hearing Board (ZHB). The ZHB determined that Huckleberry's operation of a solid waste recycling facility violated the South Whitehall Township Zoning Ordinance (Ordinance) and denied Huckleberry's appeal. We affirm.

Huckleberry owns six contiguous parcels of land, comprising 63.7 acres, located at 4359 Huckleberry Road (Property) in South Whitehall Township (Township) in the rural holding zoning district (RH District). From the 1950s through 1996, Huckleberry operated a noncoal surface

mine and quarry at the Property.[1] In July 1996, Huckleberry and the Township entered into a settlement agreement (1996 Agreement), which resolved litigation regarding the extent and legality of the mining and quarry operations at the Property. In June 2000, Huckleberry and the Township entered into another settlement agreement (2000 Agreement), which superseded the 1996 Agreement and resolved litigation regarding the Township's assessment and collection of business privilege taxes. Under the terms of the 2000 Agreement, Huckleberry discontinued mining and quarry operations; the Township absolved Huckleberry of paying business privilege taxes; Huckleberry granted the Township and its sewer authority the right to deposit clean fill on the Property; and Huckleberry granted the Township the right to temporarily stockpile leaves on the Property for a maximum of six months at a time. The Township stored leaves on the Property intermittently for 13 years.

In November 2012 and March 2013, the Pennsylvania Department of Environmental Protection (DEP) issued two permits (together, Biosoil Permits)[2] to Huckleberry, which allowed Huckleberry to construct and operate a composting and biosoil-production facility on the Property. The Biosoil Permits limited the materials that could be used in the production process to food-processing waste; pre- and post-consumer food waste; yard waste; source-separated newspaper, standard and laminated paper, and wax-coated cardboard; unpainted and untreated pallets; land-clearing and grubbing waste; and agricultural waste. The Biosoil Permits also stated that the resulting, post-production materials could be used only for or as soil additive; mulch; filter-stock media for soil erosion control; fertilizer for farming operations; and topsoil.

In March 2013, Mark Granahan, a neighboring property owner, complained to the Township that his residential property had incurred damage from stormwater runoff resulting from excavation and paving activities at the Property.[3] The Township inspected the Property in April 2013 and found that Huckleberry had paved over previously undisturbed meadow in order to build a solid waste recycling facility. As of April 2013, Huckleberry had paved 11,250 square feet.

On April 23, 2013, the Township cited Huckleberry for the following violations of the Ordinance: Huckleberry did not apply for a special exception before creating an impervious surface exceeding 10,000 square feet; Huckleberry did not obtain a zoning permit to change the use of the Property from a surface mine and quarry to a solid waste recycling facility; and Huckleberry operated a solid waste recycling facility, which is a non-permitted use in the RH District. Huckleberry appealed to the ZHB, which held three public hearings.

---

1. Mining and quarry operations are not permitted uses in the RH District. However, Huckleberry's mining and quarry operations pre-dated the Ordinance and are thus permitted, nonconforming uses. *See Lantos v. Zoning Hearing Board of Haverford Township*, 153 Pa.Cmwlth. 591, 621 A.2d 1208, 1210 (1993).

2. DEP issued Huckleberry a municipal waste permit in November 2012 and a mine permit correction in March 2013.

3. Mark and Karen Granahan, as intervenors in this appeal, also argue that Huckleberry's solid waste recycling facility has detrimentally impacted the use and enjoyment of their property due to the noxious odors emanating from the Property. At the time of the ZHB hearings, only three composting piles existed on the Property. (ZHB's Findings of Fact, No. 74.) At full capacity, the Property can hold a maximum of 15 composting piles. (*Id.*)

Before the ZHB, Huckleberry argued that: the Ordinance is preempted by the Noncoal Surface Mining Conservation and Reclamation Act (Noncoal Act);[4] the Ordinance is preempted by the Solid Waste Management Act (SWMA);[5] the solid waste recycling facility was a natural expansion of the Property's prior, nonconforming use as a surface mine and quarry; under the 2000 Agreement, Huckleberry was permitted to operate the solid waste recycling facility; and the Township is estopped from asserting zoning violations because the Township used the Property for municipal leaf storage for 13 years.

■ On November 8, 2013, the ZHB denied Huckleberry's appeal, finding that Huckleberry violated sections 12.8(a),[6] 12.28(c)(1),[7] and 12.33(p)[8] of the Ordinance. Huckleberry appealed to the trial court, which affirmed the ZHB's decision. Huckleberry now appeals to this court.[9]

■ Huckleberry first argues that the ZHB erred in finding that Huckleberry violated section 12.8(a) of the Ordinance by producing biosoils at the Property without first securing a zoning permit. Huckle-

berry asserts that the process by which biosoils are produced is preempted by the Noncoal Act. Section 16 of the Noncoal Act states:

> Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code [MPC], all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth, by this enactment, hereby preempts the regulation of surface mining as herein defined.

52 P.S. § 3316. Huckleberry claims that by issuing the Biosoil Permits, DEP determined that Huckleberry's solid waste recycling operation derives from its prior surface mining and quarry activities. We disagree.

First, because the Ordinance was enacted pursuant to the MPC, it is not superseded by the express language of the Noncoal Act. Second, this court has held that local land use ordinances may govern *where* a regulated activity takes place but

---

4. Act of December 19, 1984, P.L. 1093, *as amended*, 52 P.S. §§ 3301–3326.

5. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003.

6. Section 12.8(a) of the Ordinance provides that "[a] zoning permit shall be secured prior to the creation of or change to any use of a building or of land.... [and] for each nonconforming use and each nonconforming structure[,] including expansion of or change of use or addition to a structure or change of use of the land...." (ZHB's Findings of Fact, No. 21.)

7. Section 12.28(c)(1) of the Ordinance identifies as a special-exception use "[i]mpervious surfaces in excess of 10,000 sq[uare] f[eet] in the aggregate as required by Section 12.33(p) [of the Ordinance]." (ZHB's Findings of Fact, No. 21.)

8. Section 12.33(p)(1) of the Ordinance defines "impervious surfaces" as "non-grassy areas such as, but not limited to, driveway, hardtop surfaces, compacted rock surfaces and buildings." Section 12.33(p)(2) of the Ordinance states:

> Impervious surfaces in excess of 10,000 square feet in the aggregate are subject to Special Exception Use Review by the [ZHB]. The pre-development condition of the lot, as well as the proposed additional impervious surface, shall be considered in determining the total amount of impervious surface....

(ZHB's Findings of Fact, No. 21.)

9. In a land use appeal where the trial court has taken no additional evidence, our review is limited to determining whether the ZHB committed an error of law or abused its discretion. *In re Brandywine Realty Trust*, 857 A.2d 714, 717 n. 2 (Pa.Cmwlth.2004).

may not govern how such activity is conducted. *See Geryville Materials, Inc. v. Planning Commission of Lower Milford Township*, 74 A.3d 322, 325 (Pa.Cmwlth. 2013) ("[C]ase law differentiates local ordinances that directly regulate the operation of mines and those that regulate where the regulated activity can take place. Only the former are preempted...."), *appeal denied*, 624 Pa. 699, 87 A.3d 817 (2014). The Ordinance at issue here regulates *where* a noncoal surface mine can be located within the Township; the Ordinance does not regulate the manner in which such a facility is operated. Furthermore, the Biosoil Permits expressly conditioned DEP's approval of the solid waste recycling facility on Huckleberry's compliance with applicable zoning regulations.[10]

■ Next, Huckleberry argues that its production of biosoils at the Property is permitted by the 2000 Agreement because the solid waste recycling operation constitutes the stockpiling and storage of "mulch, topsoil, ... and related products."[11] However, the ZHB properly concluded that it could not consider this issue because the 2000 Agreement states that jurisdiction for any claim arising thereunder lies exclusively with the Court of Common Pleas of Berks County. (2000 Agmt.,

§ 30.) Therefore, the ZHB lacked jurisdiction to adjudicate any dispute arising under the terms of the 2000 Agreement.[12]

■ Even if the ZHB could have considered this claim, however, Huckleberry's proposed interpretation of the contract is inconsistent with the plain meanings of its terms. As the trial court aptly explained:

> Under any objective reading, the importation of exogenous institutional and commercial foodwastes [sic] simply does not equate to the stockpiling and storage of earthen products incidental to the mining excavation or reclamation activities with which the [2000 Agreement] was plainly concerned.

(Trial Ct. Op. at 7.)

■ We also reject Huckleberry's claim that the solid waste recycling facility is a natural expansion of the Property's prior, nonconforming use as a surface mine and quarry. *See Township of Chartiers v. William H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985, 989 (1988) (stating that a nonconforming use may be increased and expanded to accommodate the growth in magnitude over ground occupied by the owner for business at the time the zoning ordinance was enacted). Under any reason-

---

10. Likewise, the Ordinance is not preempted by the SWMA because the Ordinance regulates where a solid waste facility can be located but not the manner in which a solid waste facility can be operated. *See Office of Attorney General v. East Brunswick Township*, 980 A.2d 720, 733 (Pa.Cmwlth.2009) (stating that "a township can address land use issues in a zoning ordinance because zoning is a public health and safety issue not addressed in the SWMA").

11. Section 13.3 of the 2000 Agreement provides:

> Huckleberry and [Lehigh Valley Site Contractors, Inc. (LVSC)] shall have the right to stockpile and store reasonable quantities of materials produced and/or used by Huckleberry and/or LVSC in their business

operations and activities at the Facility including, but ... not limited to, sand, stone, decorative stone, gravel, concrete products, mulch, topsoil, fill, dirt and related products. Huckleberry and LVSC shall also have the right, as part of their business operations and activities at the Facility, to sell at wholesale, at retail or commercially to the general public any item stockpiled and/or stored at the Facility pursuant to this Paragraph.

(2000 Agmt., § 13.3.)

12. We note that Huckleberry's breach of contract action against the Township is currently pending in the Court of Common Pleas of Berks County.

able interpretation, the collection of third-party consumer food waste is neither a mining activity nor a quarry activity, nor is it a natural expansion of such activities. The evidence presented at the hearings established that:

> [Huckleberry's] composting and biosoils operations entail the receipt of organic materials including, among others, food wastes, which would then be mixed, blended, processed and cured in unenclosed, aerated static piles maintained on the Property. All of the materials used for the composting and biosoils use are imported onto the Property from outside sources. None of the materials used in the composting and biosoils manufacturing process are derived from the Property or the quarry on the Property.

(ZHB's Op. at 35.) Furthermore, in its written applications for the Biosoil Permits, Huckleberry stated that the proposed composting operation was neither a coal mining project nor a noncoal mining project. (ZHB's Findings of Fact, Nos. 26–27, 43.) Thus, the ZHB correctly determined that the solid waste recycling facility is not a natural expansion of the Property's prior, nonconforming use as a surface mine and quarry.

Next, Huckleberry argues that the ZHB erred in finding that it violated section 12.33(p) of the Ordinance by creating new impervious surface without obtaining a special exception. Again, Huckleberry asserts that section 12.33(p) of the Ordinance is preempted by the Noncoal Act by way of DEP's issuance of the Biosoil Permits. We disagree. As discussed *supra*, the Ordinance is not preempted by the Noncoal Act, and the Biosoil Permits expressly conditioned DEP's approval of the solid waste recycling facility on Huckleberry's compliance with all applicable zoning regulations.

█ Finally, Huckleberry argues that the Township is estopped from asserting zoning violations because the Township previously used the Property for municipal leaf storage. We disagree. Under the 2000 Agreement, Huckleberry expressly granted the Township the right to store leaves on the Property in exchange for Huckleberry's exemption from paying business privilege taxes. (*See* 2000 Agmt., §§ 4.1, 13.1.) The Township's limited, contractually-granted right to store leaves on the Property does not confer on Huckleberry the right to store and recycle third-party food waste at the Property.

Moreover, Huckleberry failed to demonstrate that the Township acquiesced in the establishment of a solid waste recycling facility at the Property. Immediately after receiving Granahan's complaint about potentially unlawful activities at the Property, the Township conducted an on-site investigation and issued a civil enforcement notice to Huckleberry. Huckleberry also failed to prove that it relied in good faith on any actions by the Township or that the Township's enforcement of the Ordinance would result in any hardship.

Accordingly, we affirm.[13]

### ORDER

AND NOW, this *15th* day of *July*, 2015, we hereby affirm the August 26, 2014, order of the Court of Common Pleas of Lehigh County.

---

**13.** Judge Renée Cohn Jubelirer did not participate in the decision in this case.